## C. W. MORGAN v. THE STATE.

### No. 7628.   Decided March 2.

1. **Theft—Indictment, Counts in, Dates in.**—Where an indictment for theft contained five counts, the first for theft and the other four for receiving and concealing stolen property, knowing same to have been stolen, and the date and venue of said offense were properly alleged in the first count, *held*, that it was unnecessary to repeat the date and venue in the other counts.

2. **Same—When Charge of Court is Tantamount to an Election Between Counts.**—Where there were five counts in the indictment, the first being for theft, and the other four being for receiving and concealing stolen property, and as to said first count the court simply gave the definition of theft, without authorizing the jury to find upon that issue, and then submitted the law as applicable to the other counts in the indictment for receiving and concealing stolen property, with instructions to convict for the latter offense, in case they found the defendant guilty; *held*, that such charge was tantamount to an election as between said counts of theft and receiving stolen property, and that a general verdict of guilty would be applied necessarily to one of the counts charging receiving and concealing stolen property, and could not be applied to the count charging theft of said property.

3. **Evidence as to Receiving other Stolen Animals than one Charged in the Indictment.**—On the trial, the State was permitted, over defendant's objection, to prove the receiving of other stolen cattle by the defendant, though it had not been shown that defendant had received such other cattle at the same time and place, and from the same parties, as alleged in the indictment. It was, however, further shown that after the State had closed its testimony the court withdrew the evidence objected to from the jury, and instructed them that as defendant had not been sufficiently connected with said other cattle, they would not consider the evidence relating to them for any purpose. *Held*, that no error or prejudice to the defendant is shown. But *held* further, that the evidence was legitimate and primarily competent and admissible, as it tended to prove the fraudulent intent of defendant in respect to the animal named in the indictment, and also tended to show a systematic plan on defendant's part to commit the crime charged.

APPEAL from the District Court of Jack.   Tried below before Hon. J. W. PATTERSON.

This appeal is from a conviction for receiving and concealing one certain head of cattle, the same being the property of one S. E. Moore, and wherein the punishment assessed was confinement in the penitentiary for two years.

In substance, the testimony adduced upon the trial was as follows:   It was proved by S. E. Moore, the alleged owner of the stolen animals, that defendant had told him, witness, that he had purchased the animals from one Lee Reynolds, and that he had sold them to one Owens, who had a ranch in the Indian Territory.   J. S. Brooks, A. J. Jones, H. F. Shaw, Mark Miller, W. M. Maggard, and F. L. Darnell, all, in substance, testified that they went to Owens' pasture in the Indian Territory in search of cattle that had been stolen from themselves and other parties.   That they found a number of stolen cattle, some forty or fifty head, a number of which had the brands changed on them, and among them were the two animals involved in this prosecution, belonging to S. E. Moore.

One or more of these witnesses testified that defendant told them that he had purchased these animals from Lee Reynolds, and the witness Darnell stated that defendant told him that he had received them all at one time.

By J. S. Owens it was proven, that on April 2, 1889, he purchased of, and defendant turned over to him, more than one hundred head of cattle, near the bank of Red River, in Clay County, Texas.   That they were in different brands, and two of the animals had the brand of S. E. Moore, the alleged owner in this prosecution.   That defendant did not execute a bill of sale to him on the day of the delivery of the cattle, but that he afterward executed a bill of sale, and had it recorded in Clay County, and forwarded it to him by mail.   That this bill of sale did not correctly describe all the cattle sold and delivered by defendant to him, and that the two animals, in the brand of the prosecutor S. E. Moore, were not mentioned or described at all in said bill of sale.   That at the time of the sale and delivery to him of this lot of cattle defendant neither told him from whom he had purchased the cattle, nor did he show him a bill of sale to any of them.   That forty-eight head of these cattle were afterward claimed and taken away from his pasture in the Indian Territory by their owners. Twenty-six head, which defendant said he had gotten from one Russell, and that had recently been branded in Russell's brand, were claimed and taken for the firm of Coon & Miller.

Lee Reynolds testified for the State, and the material part of his testimony was, "that he had driven a bunch of cattle to the pen of one Watson, in Clay County; two of the animals in this bunch were the animals involved in this prosecution."   He says that when he put the cattle in Watson's pen, "The defendant was not there, and I did not see him that day.   I did not know defendant at that time.   I never sold defendant any cattle in my life.   I never sold these cattle to anybody.   I had no

contract to furnish any cattle to anybody. None of the cattle which we drove were burnt cattle. * * * I was indicted for theft of these cattle. The State's attorney agreed to dismiss these cases against me if I would testify against defendant in this case."

For the defense, it was proved by James Henry, that the witness Lee Reynolds was at his house several times during the month of March to buy some steers, and told him that he was putting up a bunch of steers for defendant Morgan. Witness said he did not know whether Reynolds had the money to get up a bunch of steers with or not. That he would not have sold Lee Reynolds his cattle without the money.

By Hardy Watson it was proved, that he and defendant went off to get up a bunch of cattle which defendant had bought. That when they returned home they found Lee Reynolds there with a bunch of cattle containing some forty or fifty head, which he had put in witness's pen. That Reynolds sold these cattle to defendant, or, at all events, he saw defendant pay Reynolds a roll of money; did not know how much; and that defendant received the cattle from Reynolds. That on the first of April he assisted defendant, with others, driving the cattle to Red River, in the direction of the Indian Territory, and that there defendant delivered them to J. W. Owens.

On cross-examination this witness testified: In the herd of cattle which we drove from the Alvin pasture, which John Russell had control of, there were about twenty-six head of cattle branded WM, which was a. fresh burnt brand, and which cattle were afterward known as the Coon & Miller cattle, and which John Russell claimed to have sold to defendant..

The witness Campbell testified, in substance, as did the witness Watson, but further testified that he had known Lee Reynolds for ten or twenty years, and he had never known him to have any property.

C. W. Morgan (defendant), being sworn, said: In February, 1889, I made a contract with J. W. Owens to put him up a hundred 2-year old steers. He was to pay me $12 or $12.50 per head. I then made a contract with Lee Reynolds, in which said Reynolds was to put me up sixty head of 2-year-old steers. I was to pay him $10 per head for them. He agreed to deliver them to me at Hardy Watson's, in Clay County, Texas. I afterward bought some cattle from Bill Campbell and John Russell and Bud Ham. I got five head from Bud Ham and seven head from Bill Campbell. On the evening of the 25th day of March, 1889, I went to Hardy Watson's place; that was the day on which Lee Reynolds was to deliver me sixty head of cattle I contracted from him. When I got there Reynolds was not there. I stayed all night at Watson's that night and ate breakfast there the next morning. After breakfast the next morning, Hardy Watson and I started to the Lindsey ranch, in Jack County, Texas, for the purpose of getting twelve head of cattle I had collected down there. When we started Lee Reynolds had not yet arrived at Watson's

with his cattle. When we got about half-way to the Lindsey ranch we met Bill Campbell and John Lindsey with the twelve head of cattle we were going after. We took charge of them and drove them back to Hardy Watson's. We got there about 2 o'clock in the afternoon. When we got there Lee Reynolds was there and had his cattle in Watson's pens.

After we ate dinner, we went to the lots and I received the Reynolds cattle. There were fifty-three head of them. Among the number were two LIZ M cattle, the ones I am charged with stealing in this case. I noticed the animals branded LIZ M, and knew it was the brand of S. E. Moore, and I asked Lee Reynolds if he got them from S. E. Moore, and he told me he did. I had bought some cattle from Mr. Moore in that brand the fall before. I asked Lee Reynolds for a bill of sale to all said cattle, and he told me some of the cattle had gotten away and he would go and get them and some others he had and bring them to me in order to fill out his contract, and give me a bill of sale to all of them. We agreed that he should meet me, with the rest of the cattle, at Alvin's pasture, on the following Sunday.

I paid Lee Reynolds for the 53 head at this time. I got some of the money from J. W. Owens, and some of it out of the bank at Henrietta, with which to pay him. I don't know just how many dollars I paid him, but it was nearly $600. There were some 3-year-old steers in the bunch, for which I paid him $15 per head. I took out my day book and put down a tally of the brands of the cattle I bought from Reynolds. I did not examine the brands of the cattle, but put down the brands given to me by Lee Reynolds. The cattle were in the same lot where we were, while I was taking down the tally. The hair on the cattle was long, and the brands were difficult to see. There were a great many different brands given to me by Lee Reynolds. That afternoon Hardy Watson and I drove the cattle I received from Lee Reynolds to Alvin's pasture, which was under the control of John Russell. On the following Sunday I went back to the Alvin pasture for the purpose of receiving the remaining cattle from Lee Reynolds, and getting the bill of sale, but Reynolds never came, and I never saw him after that until he was arrested.

I had employed Bill Campbell and Hardy Watson to assist me in driving the cattle to deliver to J. W. Owens, on my contract. I bought about 70 head from John Russell. A part of these were HRM, which was John Russell's brand; 26 of them were branded WM, said brand being a fresh brand and a burnt brand, and afterwards known as the Coon & Miller cattle. These were the cattle that Russell got from Bill Ligon. These cattle, 70 head, were delivered to me by John Russell on the morning of April 1, 1889, at Alvin's pasture. On that morning we put these with the cattle I got from Lee Reynolds, and Ham and Lindsey, and drove the entire bunch to Henrietta. There we put them in the Missouri Pacific stock pens, and remained over night. The next morning we drove

said cattle through Henrietta, going north. We drove them about ten or twelve miles that day, to J. R. Love's pasture, where I was to deliver them to J. W. Owens. There we met Mr. Owens, and I turned the cattle over to him on the evening of the 2d day of April, 1889. I did not give him a bill of sale then, but promised him I would go back to Henrietta and execute and record a bill of sale to said cattle, and would send it to him. I went back to Henrietta, and in three or four days after that, or it may have been a week afterwards, I executed a bill of sale, and filed it with the clerk, and told him to record it, and send it to J. W. Owens.

Here the bill of sale was shown the witness, and read in evidence by the State, and the witness proceeded in his testimony as follows:

This is the bill of sale I executed. In giving the brands in this bill of sale of the cattle I bought from Lee Reynolds, I gave the brands as shown on the tally sheet he had given me. I did not examine the brands on the animals, but took the brands given to me by Lee Reynolds. In this bill of sale I did not include the LIZ M cattle. I overlooked them and did not put them down. After I was arrested and had given bond in two cases, in the District Court of Jack County, Texas, I forfeited my bonds and went to Dakota Territory, and the sheriff of Clay County went after me and brought me back. The judgment nisi was set aside by agreement between me and the county attorney. W. E. Taylor was my attorney in this case when the prosecution was commenced, and afterward was elected to the office of county attorney of Jack County, and he agreed with me to set aside the judgment nisi on the payment of costs by me, which was done. John Russell and I were partners two or three years before this time. I was a witness for Jim Bessett when he was tried for this offense in the District Court of Jack County. I was also a witness for Watson and Bill Campbell when they were charged by complaint in the Justice Court for this offense.

The judge's qualification to the defendant's third bill of exceptions, with regard to testimony which had been admitted as to the finding of other stolen animals in Owens' pasture in the Indian Territory, states "that he admitted the testimony upon the statement of the county attorney that he would afterward show that these cattle were received by the defendant about the same time and place as the cattle mentioned in the indictment, and that he also offered it for the purpose of showing the intent of defendant in receiving the cattle mentioned in the indictment."

The learned trial judge adds: "After the State closed its evidence, this evidence was withdrawn from the jury, they being told by the court that the defendant had not been connected with said cattle, and that they would not consider it for any purpose."

Defendant's fourth bill of exceptions complains that the court permitted the prosecution, over his objections, when he was a witness upon the stand, in his own behalf, to prove, on his cross-examination, that he

(defendant) had purchased from John Russell what was known as the Coon & Miller cattle, and that they had the burnt brands WM or WE over the old brands, and that defendant drove these cattle, together with those alleged to have been stolen, from the Alvin pasture and delivered them to Owens. The objection to this testimony was, that if these Coon & Miller cattle were stolen, they were stolen at a different time and place, and received at a different time and place, from those charged in the indictment, and therefore constituted a separate and distinct transaction.

The appeal came on to be heard at the Galveston term, and the judgment was affirmed in the opinion of the court as found below, the opinion being delivered by Judge Davidson, Judge Hurt being absent.

Appellant filed a motion for rehearing, which said motion was transferred to the Austin branch of the court for its consideration, and was there overruled. We find the following indorsement on the motion for rehearing: "The majority of the court [Simkins, J., having in the meantime become a member of the court] are of the opinion, the motion for rehearing should be overruled. Hurt, P. J., is of the opinion that the motion should have been granted, on the ground that the evidence with reference to other cattle should have been excluded."

*R. D. Welborne*, for appellant.—Evidence of the theft, or receiving of other stolen cattle, which were not stolen or received at or near the same time or place, and from the same person as the alleged stolen animal, is not admissible as against defendant. Welhousen v. The State, 30 Texas Ct. Apps., 623.

The fourth assignment of error complains of the action of the court in requiring the defendant, C. W. Morgan, over objection, to testify that appellant purchased from one John Russell what was known as the Coon & Miller cattle, and that said cattle were the ones branded " W M " or " W E " over the old brands, and that appellant drove these cattle, with the one he is charged in this cause with having stolen, from Mrs. Alvin's pasture, and delivered the same to Owens, for the reason that said testimony was irrelevant and immaterial, and calculated to prejudice the defendant's rights before the jury on the trial of this cause; and because it was clearly shown by the evidence that if the said Coon & Miller cattle had been stolen, the same were stolen at a different time and place to the head of cattle charged in the indictment in this case; and because the evidence clearly shows that appellant, Morgan, received said Coon & Miller cattle at an entirely different time and place and from a different person from the one charged in the indictment.

The thirteenth assignment of error complains of the failure of the court to charge the jury as to which of the five separate counts in the indictment they should consider in arriving at their verdict in this case, and in not charging the jury to state in their verdict on what count in the in-

dictment they found the defendant guilty, if they should find him guilty. The fourteenth and twenty-first assignments of error call in question the ruling of the court in reference to the second count in the indictment, the court having charged on said count and refused appellant a new trial, for the reason that said second count, which seeks to charge appellant with unlawfully receiving stolen property from Lee Reynolds, fails to charge any offense against the laws of the State of Texas, and shows to be barred by the statute of limitation, and does not allege the date of time at which the pretended offense was committed. Art. 420, subdiv. 6, Code Crim. Proc.; The State v. Slack, 30 Texas, 354; The State v. Johnson, 32 Texas, 96; The State v. Eubanks, 41 Texas, 291; Drummond v. The State, 4 Texas Ct. App., 150; Sanders v. The State, 26 Texas, 119; The State v. Davidson, 36 Texas, 325.

The defendant could not be convicted in this case for theft and for receiving stolen property, but could only be convicted for one or the other of the two offenses. It is true that the court did not charge the jury upon theft further than to define the offense in the first part of his charge, but the jury in their verdict found him guilty as charged, which means as charged in the indictment, without stating of what offense they found him guilty. The court, under this verdict, rendered judgment finding appellant guilty of unlawfully receiving stolen property. Defendant asked for a new trial upon this ground. Miller v. The State, 16 Texas Ct. App., 417; Hickman v. The State, 22 Texas Ct. App., 441; Guest v. The State, 24 Texas Ct. App., 530; O'Bryan v. The State, 27 Texas Ct. App., 339.

No brief for the State has come to the hands of the Reporter.

DAVIDSON, JUDGE.—There were five counts in the indictment preferred against the defendant; the first being one for theft, and the other four charging appellant with receiving stolen property, knowing the same to have been stolen. The verdict of the jury was: "We, the jury, find the defendant guilty as charged, and assess his punishment at confinement in the penitentiary for two years." The judgment rendered upon this verdict was one finding the defendant guilty of fraudulently receiving stolen property, knowing the same to have been stolen.

It is insisted on this appeal that the verdict and judgment must have been predicated upon the second count in the indictment; and it is further insisted, that if such be the case, the verdict and judgment can not stand, because the said second count is fatally defective, in that it fails to state or allege in terms the date when and the place and county in which the said offense was committed. The date and the county were properly alleged in the first count of the indictment, which was the count for theft. This being so, it was unnecessary to repeat the date and county

in the second count.    In the case of Hutto v. The State, 7 Texas Court of Appeals, 44, where, in the second count of an indictment, the name of the month was written "Janury," and in the first count, which was dismissed, it was correctly spelled, it was held that the motion in arrest of judgment was correctly overruled; and the case of Wills v. The State, 8 Missouri, 52, was cited, wherein it was held, that where a nolle prosequi to the first of two counts of an indictment was entered, and the time of committing the offense was only shown by reference to the first count, the defendant might be tried and convicted on the second count.    Boles v. The State, 13 Texas Ct. App., 650.    See, also, Regina v. Waverton, 2 Lead. Crim. Cases (2d ed.), 157.    The particular objection to the second count, as above stated, is not well taken.    But, even if it were well taken, we do not concur with counsel for appellant in his assertion that the verdict and judgment were necessarily predicated upon the second count.    The verdict might as well have been based upon one or more of the succeeding counts, which also charged receiving stolen property.

Again, it is objected to the verdict that it is too general in its character, and could apply as well to the charge for theft as to the other counts of receiving stolen property.    And in this connection it is claimed that the verdict is defective, because, if based upon the first ground alleged— the theft of the property—then there was no charge of the court which authorized such a verdict for theft, inasmuch as the charge simply defined theft, without applying it to the facts of the case, and without instructing the jury as to the penalty.    And again, in this connection it is insisted that, after the testimony had been adduced, the court erred in declining and refusing to make the prosecution elect upon which count a conviction would be claimed, and whether a conviction would be sought for theft or only for receiving stolen property.    We are of opinion that the supposed errors complained of are not maintainable. The charge of the court simply defined theft, but did not apply the law thereof to the facts of the case, nor authorize the jury to return a verdict based upon the proof of the theft of the animal.    In his charge the court only applied the law to receiving and concealing stolen property under the other counts in the indictment.    That he should have defined theft was necessary in order that the jury might intelligently act with reference to the receiving and concealing of property, knowing it to have been stolen.    The fact that he did not submit the question of theft to the jury as an independent crime, to be ascertained by them from the facts, in our opinion, manifests that he intended to limit and restrict their investigations to the charges of receiving stolen property, knowing the same to have been stolen.    Under this charge the jury could not have found the defendant guilty under the first count, which was for theft, because there was no penalty provided or prescribed by the court upon which they could have acted, and the court did not apply the law of

theft directly to the facts before them, and authorize them to find a verdict of theft. His failure to do so was tantamount to a withdrawal of the charge of theft from the jury, and was tantamount to an election as between theft and receiving stolen property. It had the same effect as though the court had required the prosecuting attorney to say whether he would elect as between theft and receiving stolen property.

During the trial the State proposed to prove the receiving of other stolen property by the defendant than that charged in the indictment. This evidence was offered for the purpose of showing the intent of the defendant with reference to receiving the cattle mentioned in the indictment. This testimony was objected to by the defendant, because the cattle had not been taken about the same time and place as that charged in the indictment, and because it had not been shown that the defendant received said cattle at the time and place and from the same parties from whom he had received the one head of cattle alleged in the indictment. It is further shown by the qualification of the judge to this bill of exceptions, that after the State closed its evidence, this testimony, as objected to by the defendant, was withdrawn from the jury, and they were instructed by the court that the defendant had not been connected with the said cattle, and they would not consider it for any purpose.

We are of opinion that the testimony was admissible in the first instance, and that the defendant can not complain, inasmuch as the court withdrew the testimony from the consideration of the jury, and told them not to consider it for any purpose. We are of opinion that the testimony should have been admitted, as it tended to prove the fraudulent intent upon the part of the defendant with respect to receiving the one head of cattle named in the indictment, and with knowledge on his part at the time he received said yearling that it was stolen property. Harwell v. The State, 22 Texas Ct. App., 251. It also tended to show a systematic plan on defendant's part to commit the crime charged. Hennessy v. The State, 23 Texas Ct. App., 340.

It is shown by the evidence that the defendant in this case had contracted to deliver a lot of cattle in the Indian Territory; that he had employed several parties to procure cattle to make up this herd, and among others was Lee Reynolds, the party from whom he is charged to have received the stolen cattle involved in this transaction. Quite a number of these cattle, when received by him, had their brands burnt, and among the number those embraced in this bill of exceptions, and claimed to have been received by him at a different time and place from that mentioned in the indictment. Though the animals may have been received by him at different times, or different days, still we are of opinion that the evidence was legitimate to show defendant's intent, as well as knowledge on his part that they were stolen property. All these animals were subsequently found, by parties owning or claiming them, in Owens' pasture in

the Indian Territory, where they had been placed by Owens after the delivery of same to him by defendant. It is further shown by the testimony, that defendant knew that some of these parties, and especially Lee Reynolds, the party from whom he claims to have purchased a large number of these cattle, had neither cattle of his own, nor money with which to buy same to furnish him, in order that he, defendant, might comply with his contract with Owens. He says in his testimony that there were a great many different brands on the cattle purchased from Lee Reynolds; and in giving the bill of sale to Owens for the cattle delivered by him, under his contract, it is shown that he did not embrace within this bill of sale a description of the animal, nor the mark and brand of the animal, alleged to have been stolen in this prosecution, though it was proven that this particular animal was delivered at the same time and place. In so far as the Coon & Miller cattle are concerned, which were also found in Owens' pasture among the cattle delivered by defendant to Owens, instead of giving the brands upon these cattle, which was WM, he gave the brands in the bill of sale as WE. The brands on the WE cattle were all freshly burnt at the time defendant received them. We are of opinion that the evidence in this case is amply sufficient to sustain the conviction of receiving stolen property, knowing the same to have been stolen; and we are further of opinion that the charge of the court presented the law fully with regard to the facts elicited upon the trial. Having found no reversible error, the judgment is affirmed.

*Affirmed.*

HURT, J., absent.