### W. S. MESSNER v. THE STATE.

#### No. 3875.    Decided January 12, 1916.

#### Rehearing denied February 2, 1916.

**1.—Embezzlement—Evidence—Letters.**

Upon trial of embezzlement, there was no error in admitting in evidence the letters of defendant with reference to the alleged embezzled property, and to prove defendant's signature thereto by comparison with defendant's proved signature.

**2.—Same—Sufficiency of the Evidence.**

Where, upon trial of embezzlement, the evidence supported the conviction, there was no reversible error.

**3.—Same—Evidence—Letters—Oral Testimony.**

Where defendant was tried and convicted of the embezzlement of money which he had received in a fiduciary character, and his letters were in evi-

dence showing that he was to apply this money to get certain land patented for his employer, there was no error in permitting the State's witness to testify that he had letters written to the defendant to have the land patented, although said letters were not introduced in evidence.

**4.—Same—Election by State—Different Counts.**

Where the defendant was charged in one count with the embezzlement of a check, and in another with the embezzlement of the money, both of which were based on the same transaction, the State could not be required to elect, and there was no error in submitting both counts to the jury. Following Gonzales v. State, 12 Texas Crim. App., 657, and other cases.

**5.—Same—Requested Charge—Voluntary Return of Money.**

Where there was no evidence that defendant returned the money which he was alleged to have embezzled, there was no error in refusing a requested charge on that issue.

**6.—Same—Requested Charge.**

Where, upon trial of embezzlement, the evidence sustained the conviction, there was no error in refusing a peremptory charge to acquit.

**7.—Same—Agency—Charge of Court.**

Where, upon trial of embezzlement, the evidence showed a specific agreement between the party alleged in the indictment and the defendant to obtain a certain patent for land with money entrusted to defendant, there was no error in refusing requested instructions that defendant was acting for another party to whom he directed his letters with reference to said matter for the use of his principal.

Appeal from the District Court of Hartley. Tried below before the Hon. D. B. Hill.

Appeal from a conviction of embezzlement; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Reeder & Dooley*, for appellant.

*C. C. McDonald*, Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of embezzlement, and his punishment assessed at two years confinement in the penitentiary.

The evidence would show that P. C. Madson lived near Sheffield, Illinois, and that he had purchased section 6, block A-7, public school land, and there was a balance due the State on the purchase price of about $900, which must be paid before a patent could be obtained for the land; that Madson was desirous of having the land patented, and had the cashier of the Sheffield bank, C. W. Boyden, to send to appellant a draft for $950 to pay appellant's charges and expenses, and to pay the remainder due the State to get a patent to the land. The evidence shows appellant received this draft and deposited it at the First State Bank of Channing, having it credited to his account in the name of W. S. Messner, guardian; that he appropriated this money to his own use, and did not pay the balance due the State, nor any part thereof, and made no effort to have the land patented. The evi-

dence shows that Mr. Madson had the bank cashier do all the writing to appellant, and appellant's letters were addressed to the bank cashier, Mr. Boyden. Appellant objected to the introduction of some four letters alleged to have been written by him to Mr. Boyden. The first letter states: "I am in receipt of papers from Judge D. B. Hill, in re to that part of section 6, block A-7, public free school land, in Dallam County, Texas, owned by Mr. Peter C. Madson. . . .

"This land was sold at $2 an acre, I presume, hence the amount due on it is $897 for the 460 acres, or $898.56 for the 460.8 acres.

"The fees in the Land Office if it has to be patented separately will be about $17 and it will have to be resurveyed, which will be an additional expense, but I will cut that out and also one patent fee by getting a straight deed from Clifton Egerton direct to Mr. Madson, covering the whole survey, and if I can succeed in doing this, which I think I can, it will cut the Land Office fee down to about $10 and my fee will be about $20, and in this case the surveyor's fee will be entirely cut out.

"I will do the work, however, in the cheapest possible way that will be consistent with getting it absolutely correct in all things.

"You may remit $950 in any eastern exchange, which I can use here and will be at no expense for exchange, and I will procure Austin exchange here, I am certain that this amount will cover and probably will be a little more than enough.

"I write you thus fully in regard to the matter that Mr. Madson may fully understand the situation, and by tomorrow I will have a complete abstract of the land before me and will get it in shape as rapidly as possible.

Very truly yours,<br>(Signed)        "W. S. Messner."

The next letter, among other things, states: "I am in receipt of yours of 29th with enclosure of draft for $950 and will advise you if any hitch arises in patenting the land, which I do not anticipate," etc. The other two letters are directly relevant to the transaction, and all are admissible if properly proven up. Mr. Madson testifies that Mr. Boyden received these letters at Sheffield, Illinois, and he read them to him. That he and Mr. Boyden came to Texas together, and he was present when Mr. Boyden delivered the letters to the district attorney. The letters are written upon letterheads bearing the following words: "Hartley County Abstract Company. Incorporated. W. S. Messner, General Manager." The letters are dated at Channing, Texas, and the banker at Channing, who testified that appellant deposited the $950 draft in his bank, also testifies that the signature of the letters "Looks like W. S. Messner's signature. I was familiar with his signature several years ago. In my opinion that is his signature." The draft that was deposited was also endorsed W. S. Messner. There was no error in admitting these papers in evidence, and the bills complaining of their admissibility present no error. The banker also testified that

appellant checked the money out of the bank and appropriated it. Commissioner of the Land Office J. T. Robison testified: "As Commissioner of the General Land Office I have charge and custody of the records and archives of that department. The balance of the purchase money due the State of Texas on section 6, block A-7, public free school land, Dallam County, Texas, was never sent to the Land Office by Mr. Messner or anyone else. This land has never been patented. The defendant never did request a patent to that land, nor did he ever send the requisite amount of money or fees there to have it patented."

Thus the evidence clearly shows that appellant received the money of Mr. Madson to have the land patented, made no effort to patent the land, and appropriated the money to his own use. He did not testify in the case, nor seek to explain in any way why he did not make an effort to secure the patent for the land, nor what he did with the money after receiving it.

While Mr. Madson was testifying he stated that Mr. Boyden did all the corresponding with Mr. Messner. That he would write for him; that he saw the letters, sealed in an envelope, and addressed to appellant at Channing. That they were then deposited in the box at the bank where all letters for mail were deposited. That he did not personally see the letters deposited in the postoffice. As none of these letters were introduced in evidence, nor the contents of them, the bills complaining of these matters present no error, unless it be the bill which states that the witness was permitted to testify that he had Mr. Boyden write to defendant to have the land patented. That Boyden had written appellant, "You get the land patented." If there was no other evidence in the record that appellant contracted and agreed to get the land patented, this bill would probably present error. The contents of the letters written by Boyden to appellant would perhaps not be admissible without a more specific showing that he received the letters, and a demand had been made on him to produce the letters on the trial, or secondary evidence of their contents would be introduced. But this statement in the light of the statements contained in appellant's letters, which were properly proven up and admitted in evidence, renders the admission of the above testimony immaterial. In all of his letters he admits he had agreed to have the land patented. After writing as he did in the letters above copied, in other letters he writes: "The patent may be a little slow in coming out of the Land Office, but that will be on account of waiting its turn. I have sent all necessary papers. I have gotten all necessary matters in shape to transfer the land and have the whole survey patented in one patent to Mr. Madson." Other similar statements are contained in appellant's letters, and the isolated statement of Mr. Madson, above recited as being admitted in evidence, under such circumstances, presents no reversible error.

The indictment contained two counts—one charging embezzlement of the check, and the other charging embezzlement of the money. Both counts were based on the same transaction, and there was no error in

refusing to require the prosecution to elect on which count they would ask for a conviction, nor in submitting both counts to the jury. Gonzales v. State, 12 Texas Crim. App., 657; Green v. State, 21 Texas Crim. App., 64; Morgan v. State, 31 Texas Crim. Rep., 1.

There is no proof nor suggestion in the evidence that appellant returned the money, therefore there was no error in refusing the special ·charge on that issue. The evidence shows he received the money, deposited it to his credit, and checked it out in small quantities.

The evidence sufficiently shows that appellant had agreed as agent to secure a patent for the land for Mr. Madson, and the court did not err in refusing the peremptory instructions requested. In one letter he says: "I will do the work in the cheapest way possible that will be consistent with getting it absolutely correct in all things. You can remit $950 in eastern exchange. I am certain that this amount will cover and probably will be a little more than enough."

As the letters disclose there was a specific agreement on the part of appellant to obtain a patent for the land, there was no error in refusing special charges Nos. 3 and 4. His letters disclose he knew he was acting for and on behalf of Mr. Madson, and he was not acting for Boyden.

The charge of the court fully and fairly submits all the issues in the case, and the judgment is affirmed.

*Affirmed.*

[Rehearing denied February 2, 1916.—Reporter.]

