## TOM SMITH V. THE STATE.

### No. 6203.  Decided May 11, 1921.

**1.—Burglary—Charge of Court—Explanation of Recent Possession.**

Where, upon trial of burglary, the theory of the State was that defendant had stopped the car at a point where he was keeping watch for his companion in crime, while the latter broke into the garage and stole the articles which were lost, etc., there was no error in the court's charge to tell the jury upon that issue, that if defendant was not a principal in the burglary and he received the stolen goods from his said companion, they would acquit him, and to refuse the requested charge, which was an exact copy of the form of charge laid down in the case of Wheeler v. State, 38 Texas Crim. Rep., 71, which was not applicable to the facts in the instant case.

**2.—Same—Form of Charge—Practice on Appeal—Explanation.**

The charge recommended in the Wheeler case, supra, has not been favored by this court, which has always looked with more favor upon the shorter and simpler charge instructing the jury that if they believed the statement made by the accused, they would acquit.  Following Robert v. State, 60 Texas Crim. Rep., 20, and other cases.

**3.—Same—Principals—Charge of Court—Issue in Evidence.**

Where, upon trial of burglary, the evidence showed that the defendant was keeping watch while his companion committed the burglary, and the trial court no doubt had in mind in submitting his charge on principals this issue raised by the evidence, to which he applied his charge, there was no reversible error.

**4.—Same—Sufficiency of the Evidence.**

Where upon trial of burglary the evidence sustained the conviction under a proper charge of the court, there was no reversible error.

**5.—Same—Rehearing—Principals—Keeping Watch—Presence of Principal.**

Where, upon trial of burglary, the evidence showed that defendant kept watch while his companion in crime committed the burglary, it was not essential that he was present at the immediate time and place of the commission of the offense to make him a principal, if he knew of the unlawful act and was keeping watch to prevent interruption or to secure the safety of his companion.  Following Middleton v. State, 86 Texas Crim. Rep., 320, and other cases.

**6.—Same—Explanation of Property Recently Stolen—Requested Charge.**

The requested charge has been used in cases in which the State seeks to have drawn the inference of guilty connection with the offense from the possession by the accused of the fruits of the crime, but it is not sufficient in all cases and was not so in the instant case.  Following Stephens v. State, 69 Texas Crim. Rep., 437, and other cases.  ,

Appeal from the District Court of Marion.  Tried below before the Honorable J. A. Ward.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*P. G. Henderson* and *J. H. Benefield,* for appellant.—On question of recent possession and explanation: Wheeler v. State, 30 S. W. Rep., 913; Lovelace v. State, 76 id., 756; Merriwether v. State, 115 id., 44.

*R. H. Hamilton,* Assistant Attorney General, for the State.—Cited cases in opinion.

LATTIMORE, JUDGE.—Appellant was convicted of burglary, and his punishment assessed to two years' confinement in the penitentiary.

He was indicted as a principal to the burglary of a house alleged to have belonged to one J. E. Hale in the City of Jefferson, the offense being alleged to have occurred about the 21st of March, 1920. It appears from the record that this date was upon a Sunday. Appellant had formerly lived in the city of Jefferson, but at the time of the transaction inquired about he was living at Marshall where he worked in a garage, which was owned by the sheriff of Harrison county. J. E. Hale was running a garage in the city of Jefferson, and also had for sale certain automobile accessories such as inner tubes, jacks, etc. All the parties to this direct transaction were negroes. Marvin Pitts worked at Hale's garage. On the Sunday in question the appellant was doing considerable joy riding in a big gray car that he owned or was using, and with one or two other parties made a trip to Jefferson, intending to go from there on to Texarkana. At Jefferson he picked up some other negro men and women; among those picked up was Marvin Pitts. On their trip to Texarkana they had to turn back at Sulphur Bottom on account of high water, and had the misfortune to have a blow-out; it seems that Pitts told the appellant that as he, Pitts, had not paid anything for his part of the expense of the trip, he would get him an inner-tube. They came back to Jefferson, and from Jefferson went back to Marshall, Pitts going with them presumably to be in company with one of the girls appellant had in the car, and with whom Pitts was very much enamored. They then came back from Marshall to Jefferson to return some of the women and men who lived there, and while at Jefferson on this last trip this burglary seems to have occurred. They left Marshall about 9:30 at night on this last trip to Jefferson, and reached the latter place about 10:30 or 11 o'clock. When they reached Jefferson, Pitts got out of the car near a hamburger joint; one of the negroes in the car testified that he whispered something to appellant which was not understood by the witness, as he was talking so low he could not understand him. After Pitts got out of the car appellant took some of the men and women to their respective homes and came back to town; the car either stopped because of some defect in the gasoline feed or was stopped by appellant. Upon this point there is some controversy. It was the State's theory that the appellant had stopped the car at a point where he was keeping watch for

Pitts while he broke into the garage and stole the articles which were lost, or that he was waiting there in order to aid him in getting away from the place of the burglary. In support of this theory the State introduced a white witness by the name of Vernon, who walked up to the car while it was standing there, and he testified the engine was running at the time he walked up, but that when he reached the car appellant said there was something the matter with the engine and got out and raised the hood; that there was nothing the matter with the engine that he saw, and the witness Vernon says that Pitts came up and got in the car while he was there. The negroes who were in the car admit that it stopped at this point because of some engine trouble; that appellant got out and worked on the car some little time, and that it was while he was working on the car Mr. Vernon came up; that after the engine was repaired by appellant he started the car up and they drove around the block, when Pitts ran out of an alley and hung on to the side of the car, throwing something between the seats, and climbed in the car, saying he believed he would go back to Marshall and return on No. 4. Appellant continued to drive the car all the way from Jefferson to Marshall on this last trip, with Pitts sitting upon the back seat with the other negroes. Ed Hyde was riding on the front seat with appellant. He testifies that as they were crossing a creek somewhere between Jefferson and Marshal, that either Pitts or appellant said they had better throw the boxes in the running water in order to get them out of the way, but he claims not to know whether it was Pitts or the appellant who made this statement. Another one of the witnesses who was riding in the back of the car heard this same conversation, and says Pitts was talking to some one on the front seat; that a suggestion was made by either Pitts, or the party he was talking to, that they burn the boxes (that is, the boxes in which the inner-tubes had originally come), but they finally decided to throw them into the water, and that they were thrown out at this point. The party then proceeded to Marshall where Pitts got out of the car and caught the next train back to Jefferson. Appellant claims he did not know what had been put in the car by Pitts until the next morning, when he discovered two tubes which were the same size used by him for his car. He disclaimed any knowledge of the jack at all. He put one of these tubes on his car and left the other in his room, some of the witnesses say, in a trunk, and some say in a dresser drawer. Appellant claims to have had no knowledge that the things were stolen until Pitss phoned him on Monday morning telling him to destroy them as the law was coming over to see about it. Appellant claims that he at once told the sheriff for whom he was working at Marshall about it, and requested permission to go to Jefferson and take the things back, but that the sheriff told him if he had nothing to do with the theft there was no necessity for him to do that, and for him to remain in Marshall. The sheriff did not agree with him with reference to this story. He says appellant did receive a telephone call from somebody at Jefferson and

89 Tex.—21

told him it was in reference to some stolen property, but did not tell him that he, appellant, had the property until after the officers from Jefferson reached Marshall, and that this appellant, upon being interrogated about it, told the officers from Jefferson that one of the tubes was in a casing on his car and the other in his room. They got the tube off the car, and went to appellant's room where they found the other one, as some of the witnesses say, in a trunk with some clothes on top of it. They did not find the jack at this time, and did not find it until some days later, when it was found in the garage where accused worked. Appellant claims he never took the jack out of the car and knew nothing about it, or how it got in the garage.

It has been necessary to make rather an extended statement of the facts in order to intelligently discuss the matters that are raised on appeal.

The trial judge in his main charge told the jury: "If you believe from the evidence in this case beyond a reasonable doubt that stolen property that had been recently taken from said building, if any, was found in the defendant's possession, and if you believe the defendant got the same from Marvin Pitts, and if you fail to believe beyond a reasonable doubt the defendant was a principal to the said burglary, if any, as principal is defined in this charge, you must find the defendant not guilty." Appellant excepted to that portion of the charge specifically, and to none other, because he says: "It is too onerous on the defendant and does not charge the law with reference to the defendant's explanation on having the recent possession of the alleged stolen property."

In connection with this objection to the charges he requested a special charge which is almost an exact copy of the form of charge laid down in the Wheeler case, 38 Texas Crim. Rep., 350, 41 S. W. Rep., 615. While the charge in that case has been often approved by this court, yet it sometimes happens that under the facts of a particular case that charge is not applicable, which is demonstrated by the instant case. The explanation that appellant made that he had gotten the alleged stolen goods from Marvin Pitts might have been absolutely true and accounted for his possession in a manner consistent with his innocence, but that charge takes no account of the fact that in this particular instance it would not be applicable if he was in fact on watch for Pitts while he was burglarizing the store, or was waiting with his automobile to perfect his escape and aid him to get away from the scene of the crime. We think the charge of the court much more applicable than would have been the special charge requested by appellant. The court tells the jury upon that issue, in substance, that if appellant was not a principal in the burglary, and he received the stolen goods from Pitts, they would acquit him, which we take to be the law. The writer has never favored the involved charge recommended in the Wheeler case, supra, but has always looked with more favor upon the shorter and simpler charge instructing the jury if they

believed the statement made by the accused they would acquit, and where one is given it is not necessary to give the other. Roberts v. State, 60 Texas Crim. Rep., 20, 129 S. W. Rep., 611; Presley v. State, 60 Texas Crim. Rep., 102, 131 S. W. Rep., 333; Hinsley v. State, 60 Texas Crim. Rep., 565, 132 S. W. Rep., 781. For other cases on this proposition see Sec. 796, Branch's Crim. Laws of Texas, and Stevens v. State, 69 Texas Crim. Rep., 437, 154 S. W. Rep., 996; Webb v. State, 69 Texas Crim. Rep., 413, 154 S. W. Rep., 1013.

Appellant also complains of the charge of the court on principals, and asked a special charge presenting his view of that subject. The trial judge's charge defining principals was in the following language:

"All persons are principals who are guilty of acting together in the commission of an offense. When an offense is actually committed by one or more persons, but others are present and knowing the unlawful intent aid by acts, or encourage by words or gestures those actually engaged in the commission of an unlawful act, or who not being actually present keep watch so as to prevent the interruption of those engaging in committing the offense, such persons so aiding, encouraging or keeping watch, are principal offenders and may be prosecuted and convicted as such.

"All persons who endeavor at the time of the commission of an offense to secure the safety or concealment of the offenders are principals. Any person who advises or agrees to the commission of an offense, and who is present when the same is committed is a principal thereto, whether he aids or not in the illegal act.

"In this connection you are further instructed that no person is a principal in the commission of an offense unless he is at the time of the commission thereof either present, or keeping watch, or doing something to conceal the offender, or is doing something in aid of the offender."

We take it that the trial judge had in mind at the time he submitted this charge to the jury the issue raised by the evidence, that when appellant's car was standing still, he may have been keeping watch for Marvin Pitts, or was holding his car in readiness to carry him away from the place of the burglary, and, therefore, was doing something in aid of Pitts at the time he was engaged in the unlawful act, to-wit: the actual burglary of the house. The special charge as requested by appellant restricts a principal to one who is *present*, aiding and encouraging the commission of the unlawful act. It nowhere tells the jury that a person may be a principal under certain circumstances, although not *actually present* at the scene of the commission of the crime. There was for a time some confusion with reference to this matter brought about by some apparently conflicting decisions of this court, but since the case of Middleton v. State, 86 Texas Crim. Rep., 307, 217 S. W. Rep., 1046, that confusion should have been cleared up. In a very exhaustive opinion by Judge Lattimore he reviews many cases and lays down the

proposition that there are six ways in which a party may be a principal, in only tow of which is it necessary that he be actually present. Where A actually commits the offense but B keeps watch so as to prevent the interruption of A; or where A actually commits the offense but B at the time of such commission is endeavoring to secure the safety or concealment of A, or of A and B. In neither event is his presence required.

Counsel for appellant insist that the evidence is not sufficient to support the judgment. This assignment has made it necessary for us to examine carefully the entire statement of facts, and has caused us to make a more extended note of them in the beginning of this opinion than otherwise would have been necessary. The proof as to the identity of the property stolen, when taken in connection with the facts and circumstances, we think is sufficient. Pitts was working at the garage that was burglarized. Two inner tubes 34 x 4, and a jack, were missed from the garage, one of the tubes bearing a certain brand, and the other a different brand, and both being new. Two tubes of this exact description were found in appellant's possession, and a new jack of the description lost was found in the garage at which he worked in Marshall; this in connection with the conversation that occurred on the trip from Jefferson to Marshall on the night of the burglary about destroying the boxes in which the tubes came, and the fact that Pitts telephoned to appellant on Monday morning after the burglary, (which fact was introduced by appellant himself), we think sufficiently establishes the identity of the property. The issue as to whether or not the appellant acted as a principal was submitted to the jury in what we deem to be a fair and just manner, and the jury has solved that matter against appellant. This court would not under the circumstances be justified in substituting its judgment and conclusion for that of the jury, because there was evidence upon which the jury was authorized to base their verdict.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

ON REHEARING.

May 11, 1921.

MORROW, Presiding Judge.—It was the theory of both the State and the appellant that the actual actor in committing the offense of burglary was one Pitts; and the State's testimony tended to show that Pitts put the stolen property into the automobile under the control of the appellant. At this point the theories diverge, that of the State being that appellant was cognizant of the purpose of Pitts and was acting with him in the commission of the offense, though not actually present at the immediate place where it was committed. The appellant's theory was the converse of this; that he was without

knowledge of the intention of Pitts to commit the offense; that his presence in the vicinity had no connection with Pitts' conduct but that he had stopped his car for an innocent purpose; that the stolen property was placed therein by Pitts without the knowledge of the appellant, without his knowledge of the theft; and it was in accord with this theory that appellant explained his possession of the stolen property, that is, that the stolen property was found in his car where Pitts, without his knowledge, had placed it. It being conceded upon both of these theories that the appellant received the property from Pitts that fact alone did not inculpate him, but his guilt depended upon whether he was a principal actor with Pitts at the time the burglary was committed. To bring him within the statute defining principals, it was not essential that the proof show that he was present at the immediate time and place of the commission of the offense. If, knowing of the unlawful act, he was keeping watch to prevent interruption, or if he was endeavoring to secure the safety of Pitts while the unlawful act was being committed, he was a principal. Middleton v. State, 86 Texas Crim. Rep., 307; Smith v. State, 21 Texas Crim. App., 107; Simpson v. State, 81 Texas Crim. Rep., 389; Burrow v. State, 85 Texas Crim. Rep., 140.

The part of the main charge which is criticized was, we think, an appropriate presentation to the jury of the law covering the conflicting theories. Stephens v. State, 69 Texas Crim. Rep., 437, 154 S. W. Rep., 996.

The special charge requested on the law of principals, as pointed out in the original opinion, was so framed as to make appellant's presence essential; and the special charge on the explanation of the possession of property recently stolen was, as applied to the facts in the case, incomplete and inaccurate in that it required an acquittal if appellant's account of his possession was true and consistent with his innocence, ignoring the fact that reliance was not had upon possession alone to connect appellant with the offense, but that reliance was had upon the evidence tending to show appellant's guilty connection with the commission of the offense at the time, that is, that he acted with Pitts in such a manner as to make him a principal offender. The special charge which was requested has been used in cases in which the State seeks to have drawn the inference of guilty connection with the offense from the possession by the accused of the fruits of the crime, but it is not sufficient in all cases, and the one before us is an example. The charge given, which is in accord with that as proved in Stephens v. State, 69 Texas Crim. Rep., 437, 154 S. W. Rep., 996, and other cases cited in the original opinion, was well adapted to fairly and accurately present to the jury for its solution the law applicable to the controverted issues controlling the case.

Appellant's motion for rehearing presents no new questions but reiterates those originally made. We might well have been content with the review of the subject contained in the original opinion. Ap-

pellant's earnest contention that we were wrong has impelled us to look again into the questions, and on an examination of them, we are constrained to adhere to the conclusion heretofore declared.

The motion is overruled.

*Overruled.*