

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

Gerald C. Mann

ATTORNEY GENERAL

Hon. H. E. Wassell
Director
Agent's License and
Investigation
Board of Insurance
Commissioners
Austin, Texas

Opinion No. O-2135
Re: Whether facts set forth constitute
violation of theft, theft by bailee, or
embezzlement statutes.

Dear Sir:

This is to acknowledge your request for our opinion whether under a state of facts submitted by you, a criminal prosecution may be maintained as a violation of Article 1410, Penal Code, defining theft; or Article 1534, defining embezzlement; or Article 1429, defining conversion by bailee.

We take the liberty to restate the facts submitted by you, substituting for the names used:

"A Texas life insurance company on June 19, 1926, had as its president, one P, with S as secretary and A as one of its insurance agents. A's nephew, N, died on May 23, 1936. Soon thereafter P laid a scheme with A whereby A was to make application with the above company for a policy in the sum of $1,000.00 payable to himself, A, and predate the application and the company would pre-date the policy and issue it. This was done on June 18, 1936, and the policy was on that date issued by P and S, both signing same as president and secretary respectively in the presence of A, the agent and beneficiary. The application was signed 'N, applicant, by A, agent,' and the application was pre-dated as of February 20, 1936.

On June 18, 1936, the proof of death was executed by the beneficiary and claimant and on June 19th a check in the sum of $1,000.00 was issued to the beneficiary, A, and paid the same day. Immediately after A received the $1,000.00 he gave the money to S in the presence of P, all in keeping with the exact scheme.

"The $1,000.00 was paid out of the mortuary fund. This scheme was laid in this manner so that the State Insurance Department would find all the papers in order in checking claims against that fund, which, under the law is for payment of bona fide claims only under the company's bona fide policies.

"The president and secretary, of course, were authorized to pay out of the mortuary fund legitimate claims, and this $1,000.00 was paid out of that fund to the authorized agent of the company. The said agent then gave the money to the above official, with whom the agent did not have a fiduciary relationship as individual, and the said officials appropriated same to their own use."

The whole purpose and intent of the scheme outlined by you was to fraudulently take $1,000.00 from the mortuary fund with the intent to appropriate it to the use and benefit of the taker, or those acting together with him. The method of obtaining the money from the mortuary fund was to issue a pre-dated policy on the life of a person then dead, and on proof of death, to unlawfully take the money from said fund.

We quote the several articles of the Penal Code you referred to:

"Article 1410. 'Theft' defined.

"'Theft' is the fraudulent taking of corporeal personal property belonging to another from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking."

"Article 1534. Embezzlement.

"If any officer, agent, clerk, employe, or attorney at law or in fact, of any incorporated company or institution, or any clerk, agent, attorney at law or in fact, servant or employe of any private person, copartnership or joint stock association, or any consignee or bailee of money or property, shall embezzle, fraudulently misapply or convert to his own use, without the consent of his principal or employer, any money or property of such principal or employer which may have come into his possession or be under his care by virtue of such office, agency or employment, he shall be punished in the same manner as if he had committed a theft of such money or property."

"Article 1429. Conversion by a bailee.

"Any person having possession of personal property of another by virtue of a contract of hiring or borrowing, or other bailment, who shall without the consent of the owner, fraudulently convert such property to his own use with intent to deprive the owner of the value of the same, shall be guilty of theft, and shall be punished as for theft of like property."

In connection with Article 1410, supra, we direct your attention to the language of Article 1413:

"The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete."

Thus, we note three distinct and possible crimes, i.e., theft, embezzlement and theft by bailee. Article 1413, usually denominated theft by false pretext, is to be considered along with Article 1410, supra, and if the offense comes within either article, it is nevertheless theft, the indictment being the same. Taylor v. State, 25 Tex.Cr.R. 96, 7 S.W. 861; Riggs v. State, 125 Tex.Cr.R. 647, 70 S.W.(2d) 164. Many cases and textwriters recognize the difficulty of making a proper practical application of the theoretical distinctions between these related offenses. Texas Jurisprudence says: "As a matter of fact, it is apparent that the embezzlement, theft, swindling and other statutes denouncing related offenses overlap each other to a considerable extent." (16 Tex.Jur. 329).

The money in the mortuary fund was the property of the insurance company. The wrongful taking in any offense may properly be charged by an allegation in the indictment, to have been from the company. See Modica v. State, 94 Tex.Cr.R. 403, 251 S.W. 1049; Osborne v. State, 93 Tex.Cr.R. 54, 245 S.W. 928; Houghton v. State, 116 Tex.Cr.R. 70, 32 S.W.(2d) 837; Sauls v. State, 131 Tex.C.R. 180, 97 S.W.(2d) 195, and many others.

We first conclude that theft by bailee or conversion as denounced by Article 1429, supra, does not apply in this case. It has been said that for an offense to come within the purview of this statute, the fraudulent intent arises subsequent to obtaining the property. See Price v. State, 49 Tex.Cr.R. 131, 91 S.W. 571. While the Price case was overruled on this point in Alvarez v. State, 109 Tex.Cr.R. 62, 2 S.W.(2d) 849, the latter case is authority that there must be a distinct bailment of hiring, borrowing or other bailment. By "other bailment" the court says is meant: "that personal property, whose title is to remain in the owner, is delivered to another for some purpose, with the understanding, express or implied, that the acceptance by such other is for the carrying out of such purpose." In the instant case, the fraudulent intent is evident from the inception of the scheme, and prior to the removal of the money from the mortuary fund. We are unable to perceive a bailment, as that

Hon. H. E. Wassell, page 4 (O-2135)

has been defined by the courts. We quote the language of Judge Lattimore in the case of Brown v. State, 99 Tex.Cr.R. 441, 270 S.W. 179:

> "The relation of bailee as involved in our statute on theft by bailee is constituted where one obtains the property of another with the intent to use it for his own benefit and then to return it (or its equivalent in value)." (Parenthetical insertion ours.)

In determining whether the case is one of embezzlement or theft, we encounter greater difficulty. Various distinctions have been drawn and the authorities are not uniform. We have read many cases, but do not find any case, either in Texas or other jurisdictions, covering an exact fact situation to the one now under consideration.

We note the following excerpts from Texas Jurisprudence:

> "While embezzlement is akin to larceny or theft, the offenses are distinct, and a conviction for one cannot be had under an indictment for the other. But the same act may constitute both theft and embezzlement, or both theft under Article 1413 of the Penal Code and conversion by bailee; and the fact that, under the evidence, the defendant might have been prosecuted and convicted of one of them does not prevent his prosecution and conviction of the other. . . . Ordinarily, to constitute theft the fraudulent intent, which is an essential element of both theft and embezzlement, must exist when the property is taken, while in embezzlement, or conversion by a bailee, the intent may be formed after possession of the property has been obtained. . . ." (See 41 Tex.Jur. 17, et seq., II 10, 11; 16 Tex.Jur. 329, et seq., 1 7,8,10. Brown v. State, 99 Tex.Cr.R. 441, 270 S.W. 179; Connor v. State, 135 Tex. Cr.R. 429, 111 S.W. (2d) 723; Landis v. State, 85 Tex.Cr.R. 381, 214 S.W. 827.)

In considering the proper charge in the case before us, we think the provisions of Article 4747, Revised Civil Statutes, to be most pertinent:

> "Any director, member of a committee, an officer, or any clerk of a home company, who is charged with the duty of handling or investing its funds, shall not deposit or invest such funds, except in the corporate name of such company; shall not borrow the funds of such company; shall not be interested in any way in any loan, pledge, security or property of such company, except as stockholder; shall not take or receive to his own use any fee, brokerage, commission, gift or other consideration for, or on account of, a

loan made by or on behalf of such company."

From the above statute, it appears doubtful whether such a fiduciary relationship is existent as is essential under the construction placed by our courts to constitute embezzlement. In this connection, we point out that the money was really taken by A, with the assent and connivance of P and S at their instigation, suggestion and with such actual assistance as to make them guilty as principals under the statutes (Arts. 65 to 69 inclusive, Penal Code), and the construction placed thereon by the Court of Criminal Appeals.  See Smith v. State, 89 Tex.Cr.R. 319, 230 S.W. 410; Asher v. State, 128 Tex.Cr.R. 388, 81 S.W.(2d) 681; Smith v. State, 102 Tex.Cr.R. 139, 277 S.W. 666; notes on p. 86, Vol. 1, Vernon's Annotated Penal Code.

In our attempted application of the facts to the law, we have reached the conclusion that a successful prosecution may be carried on for theft under the provisions of Articles 1410 and 1413 of the Penal Code.

In the recent case of Lovine v. State, 136 Tex.Cr.R. 32, 122 S.W. (2d) 1069, the following quotation from 17 Ruling Case Law 13 is given approval:

"If a person with a preconceived design to appropriate property to his own use, obtains possession of it by means of fraud or trickery, the taking under such circumstances amounts to larceny, because in such cases the fraud vitiates the transaction, and the owner is still deemed to retain a constructive possession of the property, and the conversion of it is a sufficient trespass, or, as is sometimes said, the fraud or trick practiced on the owner is equivalent to a trespass."

As we view it, a constructive theft may be shown under the authority of De Blanc v. State, 118 Tex.Cr.R. 628, 37 S.W.(2d) 1024; Contreras v. State, 118 Tex.Cr.R. 626, 39 S.W.(2d) 62; Sherman v. State, 124 Tex.Cr.R. 273, 62 S.W.(2d) 146; Conner v. State, ;33 Tex.Cr.R. 429, 111 S.W.(2d) 723; Davenport v. State, 127 Tex.Cr.R. 552, 78 S.W.(2d) 605; and that the details of the scheme would be admissible to show the fraudulent intent at the time of the taking.

APPROVED JUN 19, 1940
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS
APPROVED: OPINION COMMITTEE
BY:      BWB, CHAIRMAN
BW:GO:wb

Yours very truly
ATTORNEY GENERAL OF TEXAS
By /s/ Benjamin Woodall
Benjamin Woodall, Assistant