No. 31,537

MARY R. LYNN, FLORENCE CROW WHITE, EVA CROW, JOHN CROW and JAMES CROW, *Appellants*, v. FRANK SCHNECK, *Appellee*.

(30 P. 2d 117.)

Opinion filed March 10, 1934.

*J. H. Brady* and *N. E. Snyder*, both of Kansas City, for the appellants.
*David F. Carson*, of Kansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action to recover real and personal property owned by Ellen King Schneck at the time of her death intestate, February 5, 1931. Plaintiffs are a half-sister and nieces and nephews of deceased, who inherit the property if deceased left no surviving husband. (It is stipulated she left no children.) Defendant claims the property as the surviving husband of the deceased. Plaintiffs contend defendant was a convict, civilly dead and incapable of entering into a contract of marriage, hence could not be a surviving husband. Defendant contends that his civil rights were restored before his marriage to Ellen King. A jury was waived, the trial court found for defendant, and plaintiffs have appealed. The question for our determination is the legal effect of the instrument under which defendant contends his civil rights were restored.

The facts, not seriously controverted, may be stated as follows:

In 1908, at a trial in Franklin county, defendant, charged with murder committed in 1906, was adjudged guilty of murder in the first degree, sentenced to be hanged, and committed to the penitentiary to await the issuance of a warrant to carry out the sentence. The legislature passed an act abolishing capital punishment (R. S. 21-403) which had the effect of making his sentence one for life imprisonment. As such a convict he was regarded as civilly dead. (R. S. 21-118.)

On December 11 and 12, 1916, there was published in a Franklin county newspaper a notice by the then warden of the penitentiary that Frank Schneck, previously convicted in that county of murder in the first degree, had filed in the office of the governor of the state his application for a pardon or parole, and that the same would be for hearing on December 27, 1916, when all persons might appear and show cause why an unconditional pardon or parole should not be granted. In 1916 and 1917 four temporary paroles were issued to him by the governor. The last of these was dated December 13, 1917, and paroled him until "further ordered." While Frank Schneck was at liberty under the parole issued by the governor, last mentioned, and on October 21, 1918, the governor issued to him the following instrument:

STATE OF KANSAS

DISCHARGE OF PAROLED PRISONER

"To All to Whom these Presents Shall Come, Greeting:

"Whereas, Frank Schneck was convicted of the crime of murder 1st in the district court of Franklin county, and was by said court, on the 1st day of June, 1908, sentenced to the Kansas state penitentiary at Lansing, and was committed to said penitentiary on the ........ day of ................, 19........; and whereas, said Frank Schneck (became eligible for parole, and was duly paroled, and) has become entitled to final discharge; (and whereas, the prison board of said penitentiary, on the) [words in parenthesis appeared in form but were deleted] ........ day of ................, 19......, decided that said ................ is entitled to his final discharge, and has made a record of the case of said prisoner conforming in all respects with chapter 318, Laws 1905, and has recommended the final discharge of said ................ and has sent the said record, duly certified, to me as governor of said state:

"Now, therefore, By virtue of the authority vested in me by the laws of this state, I do approve said recommendation and commute the sentence of said (paroled) prisoner, so that it shall terminate . . . at which time he is restored to all the rights, privileges, immunities and franchises possessed by him before such conviction.

"This pardon is granted upon the following conditions, and release under this document shall be an acceptance of each and all of such conditions, viz.:

He is to enter military service." (Five other conditions are set out, but it is conceded these are conditions subsequent, and there is no showing of their violation.)

"The grantee herein hereby, by acceptance of this pardon and this document, accepts the same with all the conditions herein contained and agrees to abide by them. . . ."

Accompanying this instrument was a letter by the governor's pardon clerk, which reads in part:

"NOTICE THE TERMS OF THIS PARDON

"This is your final discharge and conditional pardon. While it gives you all civil rights, it still requires you to live a law-abiding and good life through the full term of your sentence. If you do not do so, you will be brought back to serve the balance of your term. This is in substance continuing your parole through your entire term, but with all rights of citizenship. . . ."

On this was a notation by the deputy warden of the penitentiary:

"Frank: I made application for this discharge for you stating that you were in government service. The word 'military service' means the same."

At the time this was issued defendant was working for the government in a powder factory at Nitro, W. Va. He did not enter the military service, nor attempt to enlist. After the close of the world war he returned to Wyandotte county, Kansas, where, on February 11, 1920, he was married to Ellen King. This was a ceremonial marriage, in all respects in harmony with our law if Frank Schneck's civil rights had been restored. He worked, bought and sold property, voted, and he and his wife lived together and conducted their affairs as other citizens until her death in February, 1931.

Turning now to the legal questions involved. We take it to be conceded for the purposes of this case that under our statutes relating to decedents' estates all the property owned by Ellen King Schneck at the time of her death passed to the defendant Frank Schneck as her surviving husband if his civil rights had been restored prior to his marriage with her; but if such civil rights had not been restored the property passed to plaintiffs. We also take it to be conceded that the "pardoning power" vested in the governor by our constitution (art. 1, § 7) includes the power to parole imprisoned convicts, or to commute their sentences (*In re C. H. Charles and Louis Howard, Petitioners,* 115 Kan. 323, 327, 222 Pac. 606), and that the governor must exercise this pardoning power "under regulations and restrictions prescribed by law." (Const., art. 1, § 7; *Jamison v. Flanner, Sheriff,* 116 Kan. 624, 228 Pac. 82.) Starting with these premises we will examine the questions presented in the

light of pertinent statutes in force at the time the instruments above mentioned were executed.

Appellants first contend that the notice published in the newspaper in December, 1916, was not a compliance with our statute (R. S. 62-2216), and further that the prisoner, being "civilly dead," could not publish such a notice. Disposing of the latter suggestion first, the notice was not published by the prisoner, but by the then warden of the penitentiary, hence we are not called upon to determine the question whether the "civil death" of a convict prevents him from applying for a parole or pardon. As to the suggestion that the notice did not conform to all of the requirements of the statute mentioned we note that statute was not in force at that time, but was enacted in 1921 (Laws 1921, ch. 273). The pertinent statute in force in 1916 reads:

"The governor may pardon any prisoner convicted in any court of this state, of any offense against any law thereof, and upon such terms and conditions as he may prescribe in the pardon. But no such pardon shall be granted until after notice shall have first been given for two weeks of such application for a pardon, by publishing the said notice in a newspaper printed in the county where the conviction was had, which notice shall state the name of the applicant, the time when the application will be made, and the offense of which he was convicted. . . ." (G. S. 1868, ch. 73, § 1; G. S. 1915, § 6754.)

The notice given conformed to this statute. Appellants argue that no action appears to have been taken on December 27, 1916, at the time stated in that notice, and that there should have been a later notice at the time the temporary parole was issued in 1917 until "further ordered," and for a hearing at the time the instrument of October 21, 1918, was issued. When one notice by or on behalf of a convict has been given of a hearing of an application for his parole or pardon we do not understand the law to require subsequent notices, even though no action was taken on the date stated in the notice given. The notice given is sufficient for a hearing on the date stated therein and for the consideration of recommendations favoring or opposing the application which may be made later.

Appellants contend that the instrument executed by the governor of the date of October 21, 1918, was not in conformity with any existing law and was insufficient to restore the civil rights of the prisoner. At the time this instrument was issued, broadly speaking, there were two methods of procedure by which the civil rights of the prisoner could be restored. *First,* notice conforming to the

statute having been given, the governor could have pardoned the convict, or could have commuted his sentence, or paroled him, since power to do these things is within the pardoning power. The statute above quoted gave that authority. Or, *second*, the procedure might have been had under R. S. 62-1526 (Laws 1905, ch. 318). This provides:

"It shall be the duty of the warden to keep in communication, as far as possible, with all prisoners who are on parole and also with their employers, and when in his opinion any prisoner who has served not less than six months of his parole acceptably has given such evidence as is deemed reliable and trustworthy that he will remain at liberty without violating the law, and that his final release is not incompatible with the welfare of society, the warden shall make certificate to that effect to the prison board, and the board shall, at the next meeting thereafter, consider the case of the prisoner so presented; and when said board shall decide that said prisoner is entitled to his final discharge, said board shall cause a record of the case of said prisoner to be made, showing the date of his commitment to the penitentiary, his record while detained therein, the date of his parole, his record while on parole, and their reasons for recommending his final discharge. Said record shall be signed by the board and attested by the secretary of the penitentiary, and sent to the governor of the state, who, if he approves of said recommendation, shall commute the sentence of said parole prisoner, so that it shall terminate at once, or at such time as in his judgment he may think best, and the commutation of said sentence shall provide for the restoration of citizenship to said parole prisoner; but no petition or other form of application for either the parole or final release of any prisoner shall be entertained by the warden or prison board. Nothing in this act shall be construed as impairing the power of the governor to grant a full pardon, a conditional pardon or commutation in any case."

Appellants point out that under our indeterminate sentence law and the powers given to the warden of the penitentiary and the prison board to recommend paroles (R. S. 62-1521 to 62-1529) the defendant, Frank Schneck, was not eligible to be recommended by the prison board for parole for two reasons: (*a*) He had been convicted of murder. (*b*) He was serving a life sentence, hence there was no minimum. That is true so far as the prison board recommending a parole is concerned, but the recommendation of the final discharge and the action authorized to be taken by the governor under R. S. 62-1526 are not limited to paroles previously recommended by the prison board, but are applicable to "all prisoners who are on parole." Frank Schneck was a prisoner on parole, having been lawfully paroled in 1917 by the governor. It was therefore proper for the prison board, on the recommendation of the warden,

to recommend to the governor his final discharge. The fact that the prison board did not originally recommend the parole no doubt accounts for the fact that some of the words were deleted from the printed form used, and possibly arises from the fact that the prison board did not have a printed form which accorded strictly with the prisoner's record. It recites, however, among other things, that "Frank Schneck has become entitled to final discharge," and that some one "has made a record of the case of said prisoner conforming in all respects with chapter 318, Laws 1905, and has recommended the final discharge" and sent the record to the governor. While the form used was not the most appropriate to the circumstances, it is a substantial compliance with the statute (R. S. 62-1526), and its purpose to terminate the sentence as of the date of the instrument (no other date being mentioned), and to restore him "to all the rights, privileges, immunities and franchises possessed by him before such conviction," is clear.

Appellants call attention to the fact that on the trial of this case the records of the warden and the prison board were not shown. The evidence showed these records for those years had not been preserved. There is nothing, therefore, to dispute the statement in the instrument executed by the governor.

Appellants call attention to the fundamental distinction between the commutation of a sentence and a pardon. The words "commute" and "pardon" were both used in the instrument executed by the governor. In *In re C. H. Charles and Louis Howard, Petitioners,* supra, somewhat similar instruments were held to be commutations as distinct from conditional pardons. So far as this case is concerned it is not so material which name is applied to the instrument, for it is one authorized by statute (R. S. 62-1526), and its statutory effect as well as its specific provision is the "restoration of citizenship" of the prisoner. Since his status as being civilly dead was fixed by statute, no reason suggests itself why a statute could not provide for the restoration of citizenship.

Appellants point out that one of the conditions fixed in the instrument was "he is to enter military service." It is argued that this is a condition precedent. Obviously it could not be a condition precedent, for it was something to take place in the future, hence is properly classified as a condition subsequent. But appellants contend it is a condition which he did not comply with, hence that the instrument did not become effective. At the time it was issued

our government was engaged in war. It had soldiers in the field and was manufacturing powder for their use. Defendant was employed by the government in the powder factory. The record discloses that the governor was advised of that fact and defendant was informed that, as applied to him, the words "military service" meant the same thing as his then employment with the government. Under that state of facts he cannot be charged with having failed to comply with the condition. The result is that this instrument restored his civil rights and gave to him all the rights and attributes of a citizen.

We find no error in the judgment of the trial court, and it is affirmed.