ALICE YOUNG v. W. P. YOUNG.

(Case No. 1036.)

1. DIVORCE — PARDON — COMMUTATION OF PUNISHMENT.— The legal effect of the commutation of the punishment adjudged against one convicted of a felony is not equivalent to a pardon of the offender, so as to relieve him or her of the consequences attached to a conviction by the statute in a suit for divorce.

APPEAL from Bell. Tried below before the Hon. L. C. Alexander.

On September 10, 1877, Alice Young instituted suit in the district court of Bell county against W. P. Young to procure a divorce and for the recovery of certain real and personal property. On April 10, 1880, plaintiff filed her first amended original petition, and in addition to her original cause of action pleaded as cause for divorce that on October 24, 1877, defendant was convicted of the crime of

incest with her daughter (she, the plaintiff, not appearing as a witness against him), and the punishment was assessed at two years' confinement in the penitentiary; that his appeal from that judgment of conviction was dismissed by the court of appeals on December 2, 1877; that on April 26, 1878, sentence was pronounced upon him in accordance with the judgment; that defendant had been confined in the state penitentiary in accordance with said sentence, and had not been pardoned.

Defendant's pleadings consisted of general demurrer and denial, and plea that he had been pardoned by the governor of the state of Texas before first amended petition had been filed. Defendant's demurrer to petition was overruled; plaintiff withdrew from the jury all questions as to property, and introduced evidence to establish the alleged conviction and sentence of the defendant for the crime charged against him, and that he was delivered at the penitentiary in pursuance thereof on the 5th day of May, 1878.

Defendant offered in evidence a copy of the proclamation of the governor of the state commuting the punishment to which he was sentenced from two years to the period of one year and six months, to which the plaintiff objected because it was not a pardon of the governor for the offense, which objection was overruled. Plaintiff excepted, and the evidence was introduced to the jury. According to the terms of the proclamation the term of imprisonment was computed from the date of defendant's entrance upon the prison rolls; which term expired the 5th day of November, 1879.

·The court instructed the jury that the proclamation of the governor operated as a pardon of the defendant from the time the term limited in it expired, and that if he served in the penitentiary for that term, and it expired before April 10, 1880 (the date of filing plaintiff's amended petition), they would find for the defendant.

The plaintiff asked the court to instruct the jury that a commutation of punishment was not a pardon; and that if they believed from the evidence that defendant W. P. Young was convicted of a felony twelve months before the amendment was filed, setting up said cause of action, and had served in the penitentiary in accordance with his conviction and sentence, they would find for the plaintiff.

Verdict and decree for the defendant.

*A. M. Montriete* and *Harris & Saunders*, for appellant.

No briefs on file for appellee.

WALKER, P. J. COM. APP.— The decisive question in this case is whether the legal consequence of a commutation of the punishment by the governor of the state is equivalent to a pardon of the offender for the crime of which he has been convicted, so far as the one or the other relates to the subject of divorce under our laws. The statute regulating divorces, which was in force when the defendant was convicted of incest, and has continued still to be so, among other grounds authorizing the granting of divorces embraced the following, viz.: "In favor of either the husband or wife, when the other shall have been convicted, after marriage, of a felony and imprisoned in the state prison; *provided,* that no suit for divorce shall be sustained because of the conviction of either party for felony until twelve months after final judgment of conviction, nor then if the governor shall have pardoned the convict; *provided,* that the husband has not been convicted on the testimony of the wife, nor the wife on the testimony of the husband."

Section 11, art. 4, of the constitution of 1876 provides that: "In all criminal cases, except treason and impeachment, the governor shall have power, after conviction, to grant reprieves, commutations of punishment and pardons."

"A pardon is an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed." Bouvier's Law Dic. (word "Pardon"). "Pardon — forgiveness of a crime, remission of punishment. . . . The effect of a pardon is to make the offender a new man *(novus homo),* to acquit him of all corporal penalties and forfeitures annexed to the offense for which he obtains pardon, and not so much to restore his former, as to give him new credit and capacity." Wharton's Law Dic. (word "Pardon"). "As human actions are necessarily imperfect, the pardoning power must be vested somewhere in order to prevent injustice when it is ascertained that an error has been committed." Bouv. Law Dic., see "Pardon."

Commutation of punishment is thus defined by Bouvier — word "Commutation:" "The change of a punishment to which a person has been condemned into a less severe one. This can be granted only by the executive authority in which the pardoning power resides." Wharton's definition is, in substance, the same.

It is clear from the definitions thus given of a pardon and of the commutation of punishment that they essentially differ in their nature from each other, and that they differ no less in their moral constituents than in their immediate material and physical conse-

quences.   A pardon, in its nature, is wholly exculpatory of the con-
vict's criminality; remits the punishment, and, as it were, renews
the man and rehabilitates him in the garb of innocence and respect-
ability for the purposes of civil life, whilst a commutation of pun-
ishment in effect reaffirms his adjudged guilt, and simply mitigates
the severity of its penalty; and when the convict shall have satisfied
the milder punishment which clemency has prescribed, he remains
attainted with whatever disabilities the law may have attached to
his conviction, and he continues to rest under the obloquy that his
conviction of the crime entailed upon him.   Consequently, although
one convicted to a term of service in the penitentiary shall have the
extreme period to which he has been sentenced diminished by ex-
ecutive favor, when he shall have served its designated period, he
leaves his cell only as a discharged convict — his crime expiated
under the satisfied law, but without having received from executive
authority forgiveness of his crime, a remission of its punishment, or
any other indication than that of simple mercy of his supposed in-
nocence or moral worth.

    In no proper sense could he be deemed a pardoned convict.   The
statute regulating divorces enacted May 27, 1876, made no provision
extending exemption to convicts whose punishment may be com-
muted, and in view of the manifest difference between a pardon and
a commutation of punishment, it is, we think, a rational conclusion
to adopt, that the legislature did not mean to extend the benefits of
the provisos of the clause of the statute that has been quoted to
operate upon others than such as had received pardons.

    The first proviso, "that no suit for divorce shall be sustained
because of the conviction of either party for felony until twelve
months after final judgment of conviction, nor then, if the gov-
ernor shall have pardoned the convict," was doubtless inserted from
a careful solicitude and regard for the sacredness of the marriage
relation and the jealous concern of the law to preserve it inviolate
against every reasonable chance which might exist, notwithstanding
the conviction, that by possibility circumstances might, within one
year from that time, develop the existence of error in its procure-
ment, or other sufficient cause to induce the chief magistrate to
pardon the convict.   We can perceive no reason for conjecturing
that such a proviso as that would have been made for the purpose
of embracing those whose punishments had merely been ameliorated
by commutation; and, besides, if the commutation of the punish-
ment for a felony — confinement in the penitentiary — is the equiv-
alent of a pardon, if one should be convicted for a long period, say

twenty years, and should during the first twelve months of his confinement receive a commutation to a term of one-half that period, the result must follow that a divorce must be denied to the spouse of the convict. Such a result could not have been contemplated by the law-maker as must follow from such an interpretation of the statute.

The learned and able judge who tried the case below seems to have laid stress upon the fact that the term limited by the terms of the commutation had expired before the plaintiff filed her amended petition, and that the proclamation of commutation was effective as a pardon at the time when the defendant had completed his term of service under it. *E converso*, it would seem to follow, that if the term of service under the commutation had not expired at the filing of the amendment, or had not expired at the time of the trial, that the proclamation of commutation would not have been effective as a pardon, and that the plaintiff would have been entitled to a divorce.

This construction would be to make it operative as a pardon, not from the date of its being granted, but at the time when the defendant would be enlarged from his confinement. To this construction we cannot agree; if it is to be regarded as a pardon it becomes such when it is issued, although the convict may not be released under its operation until the time limited in it shall have expired. The character and quality of the executive act is impressed upon it when it is performed by him, and they are not determined by the circumstances and the period of time to elapse during its enforcement.

Under the rule followed by the judge below there would be but little opportunity in many cases of commutation for its application, especially where the terms of confinement were long periods of time; and consequently the law, in its operation, would be exceedingly unequal and partial. Under the construction that was given in the court below a divorce would be denied in those few and exceptional instances where the convict's term had been commuted to so short a period that he would have served the time prescribed by the commutation before the complaining party had filed his or her petition alleging the conviction of a felony, or before the time of the trial for divorce, as the case might be; and the divorce might be granted in cases where the punishment had been, in fact, commuted before the filing of the petition for divorce, or before the time of trial, but the convict's term under the commutation not then completed. Yet in either of the cases supposed, if the commutative act

of the governor is to be regarded as one which the legislature intended should have the effect to preserve the continuance of the marriage relation of the parties, a divorce would not be decreed in either case, and the consequence would follow that the benefits of the ground for divorce contemplated by the law would be afforded to those complainants whose connubial partners could not obtain a commutation of punishment, but would be denied to such whose husbands or wives, as the case might be, whose punishments were commuted, even though the term of the convict under the commutation might continue for a period beyond the limits of the reasonable expectation of life of the complaining party. The law evidently did not contemplate any such results as these, but it was intended for the benefit of those to whom a pardon should be extended. It contemplated that a pardon for the offense committed would be granted to such persons as deserved executive interposition to relieve them from a judgment that was founded, perhaps, in injustice, error, or concerning which conviction there existed circumstances that rendered the convict a proper subject to be returned again to society as a worthy member of his or her family. The legislative intent was to preserve the marriage relation as to those convicts who might receive pardons within the reasonable period designated by the law, but it did not embrace those whose punishment was merely commuted.

The court erred in admitting the proclamation of commutation; also, in the charge given, and in the refusal of the instructions asked by the plaintiff; and for these errors the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted February 27, 1884.]