In re C. H. Charles and Louis Howard, Petitioners.

No. 25,379.

In re C. H. CHARLES and LOUIS HOWARD, Petitioners.

SYLLABUS BY THE COURT.

HABEAS CORPUS—Prisoners Confined in State Prison—Released to Enlist in United States Army—Release a Commutation of Sentences and Not Conditional Pardons. Instruments by virtue of which prisoners confined in the state penitentiary were released in order that they might enlist in the army of the United States for service in the world war, interpreted, and held, the instruments were commutations of sentence, and not conditional pardons.

Original proceedings in habeas corpus. Opinion filed January 24, 1924. Petitioners discharged.

T. W. Bell, of Leavenworth, and James H. Guy, of Topeka, for the petitioners.

Charles B. Griffith, attorney-general, and Donald W. Stewart, assistant attorney-general, for the respondent.

The opinion of the court was delivered by

BURCH, J.: The proceeding is one of habeas corpus. The petitioners were released from the penitentiary to enter the army of the United States for service in the world war. Long after they had been honorably discharged from the army, their release papers were revoked for breach of condition subsequent, and they were arrested and were returned to the penitentiary for confinement during the unexpired portions of their terms. The petitioners contend they were discharged unconditionally.

In the year 1918, the inmates of the Kansas state penitentiary manifested a remarkable spirit of patriotism. The eagerness to serve their country of 196 men was gratified by release for enlistment in the American and Canadian armies, and 359 others drilled for service with wooden guns within the prison enclosure. Convicts serving terms of imprisonment were not eligible to enlist in the army. It was necessary that applicants for enlistment have the privileges of citizenship, and arrangements to restore such privileges were effected for those who were released.

The evidence discloses that the governor in 1918 now has no recollection of individual cases. They were handled by his parole and pardon clerk, and the governor has no recollection of any general policy to grant unconditional discharges to convicts released

to enter the army. The parole and pardon clerk is not aware that any such policy existed, and his practice was to procure the signature of the governor, should the governor approve, to documents intended as conditional pardons. These documents discharged from custody and restored privileges of citizenship, but contained conditions subsequent which, if violated, authorized reincarceration. Referring to the cases of Charles and Howard, the parole and pardon clerk testified as follows:

"In each of these cases this form of discharge was granted the prisoners named.

"I at no time made any agreement or promise, either individually or on behalf of the governor, with these prisoners, that if they entered the service they should receive a full and free and unconditional pardon, nor do I know that any person connected with the governor's office gave any such promise to them. Indeed, it was not the practice of the governor at this time to issue to any persons who were either on parole or conditional pardon, a full pardon without conditions, until the expiration of the term for which they were imprisoned."

The warden of the penitentiary testified as follows:

"Your affiant was not personally and directly concerned with the exact terms and conditions under which they [the petitioners] left, and does not know of any specific or general promise made to them relative to their future responsibility to the state. Your affiant himself did not promise them, or either of them, that if they enlisted in the army they would be completely and unconditionally pardoned. However, your affiant now has the impression, gained from some source, that it was his idea and understanding at that time that if these men entered the service of the government and served faithfully and well, the state would consider the debt they owed society paid, and would not hold them to a performance of the usual conditions imposed in conditional discharges."

The record clerk and parole officer of the penitentiary understood that discharges to permit enlistment in the army were unconditional pardons, and when Charles was dressed out, he told Charles to be a good soldier, and when the war was over he would be a free man, without further responsibility to the state for his offense. Howard was paroled in June, 1918. He was not able to enter the army without a pardon, and when in November arrangements were made for his pardon, he understood it would set him free unconditionally. As soon as the prisoners were released from the penitentiary they were inducted into the army, and the instruments of release were not delivered to them personally, but were sent to relatives.

*In re* C. H. Charles and Louis Howard, *Petitioners.*

On August 9, 1918, Charles was paroled upon an instrument signed by the governor and accepted by Charles in writing, the operative portions of which read as follows:

"Now therefore, by virtue of the authority vested in me by the laws of this state, I do hereby parole and temporarily release from the penitentiary the said C. H. Charles until inducted, upon the following conditions, viz.:

"1. That he shall abstain from the use of intoxicating liquors.

"2. That he shall not frequent places where intoxicating liquors are sold or drunk.

"3. That he shall not engage in any form of gambling, or frequent places or company where or by whom gambling is done, including pool halls and similar places not frequented by the best citizens of his community.

"4. That he shall abstain from criminal, vicious, lewd, or unworthy associates, keeping his conduct at all times consistent with that of the best and most respected citizens of his community.

"5. That he shall, on the first day of each month, make a report in writing, to the warden of the penitentiary, giving a statement of his occupation, location, and condition, the name of his employer, and such other facts as the warden may require.

"6. Paroled to enter military service.

"Whenever the governor of Kansas is satisfied that the paroled prisoner has violated any of the above conditions, or that the purposes and objects of this parole are not being subserved, he may issue his writ, ordering and directing that the said C. H. Charles be arrested and delivered to the warden of the penitentiary, to be received and kept, under the terms of the original judgment of conviction and commitment."

On September 13, 1918, there was issued to Charles a document entitled "Discharge of Paroled Prisoner," the operative portions of which read as follows:

"Now therefore, by virtue of the authority vested in me by the laws of this state, I do approve said recommendation and commute the sentence of said paroled prisoner, so that it shall terminate September 18, 1918, at which time he is restored to all the rights, privileges, immunities, and franchises possessed by him before such conviction.

"This pardon is granted upon the following conditions, and release under this document shall be an acceptance of each and all of such conditions, viz.: Called to the U. S. service by draft.

"1. Said C. H. Charles shall, during the remainder of the term of his sentence, refrain from the use of intoxicating liquors as a beverage, or deleterious drug or 'dope.'

"2. He shall not, during said time, carry any deadly weapon of any kind, excepting as a duly commissioned officer in the performance of his duty as such, or by lawful permission.

"3. He shall not during said time carry on his person or otherwise any gambling device, or any burglar's implements, or anything designed for the use of the commission of any crime.

"4. He shall not, during said time, violate any of the criminal laws of the state or of the nation, nor any police regulation of any city.

"5. He shall, during said term, notify the governor of his whereabouts and his post-office address, on the first days of January, April, July, and October of each year.

"Should said C. H. Charles violate any of these conditions, he shall be liable to summary arrest upon the warrant of the governor of the state for the time being, whose judgment and decision shall be conclusive as to the sufficiency of the proof of the violation of these conditions, and he shall thereon be confined in the penitentiary for the remainder of the term of his sentence, and this document and pardon to be summarily revoked.

"The grantee herein, hereby, by acceptance of this pardon and this document, accepts the same with all the conditions herein contained, and agrees to abide by them."

Howard's parole differed from that of Charles, in that it was limited to a specific date instead of "until inducted," and did not contain the condition, "paroled to enter military service." Howard's discharge was dated November 12, 1918, contained five conditions, and concluded in the same manner as the discharge given Charles. The material portions read as follows:

"Now therefore, by virtue of the authority vested in me by the laws of this state, I do approve said recommendation, and commute the sentence of said paroled prisoner, so that it shall terminate 11-20-18, at which time he is restored to all the rights, franchises, privileges and immunities possessed by him before such conviction.

"This pardon is granted upon the following conditions and release under this document shall be an acceptance of each and all of such conditions, viz.: . . ."

The petitioners say they were released by virtue of documents which they believed, and had reason to believe, would be unconditional; they enlisted in the army, served there, were honorably discharged, and for some years their conduct was not subject to reproach; and they contend the documents ought to be interpreted as instruments freeing them unconditionally from penal servitude. While the record discloses irregularities in the discharge of the petitioners, the state rests legality of reincarceration on the documents themselves.

The constitution vests the pardoning power in the governor, under regulations and restrictions prescribed by law. (Art. 1, § 7.) As the law stood in 1918, the governor could pardon on such terms and conditions as he might prescribe in the pardon, but no pardon could be granted except on notice. (Gen. Stat. 1915, § 6754.) No notice, however, was required in the case of pardons to restore civil rights,

*In re* C. H. Charles and Louis Howard, *Petitioners.*

granted not more than ten days before expiration of term. (R. S. 62-2222.) The governor could also commute sentence in any criminal case whenever he deemed it proper and advisable. Commutation consisted in reducing the penalty, within certain limitations. (R. S. 62-2220.)

The indeterminate-sentence law provided for final discharge of a paroled prisoner on recommendation of the prison board, accompanying a complete record of the case, as follows:

"Said record shall be signed by the board and attested by the secretary of the penitentiary, and sent to the governor of the state, who, if he approves of said recommendation shall commute the sentence of said parole prisoner, so that it shall terminate at once, or at such time as in his judgment he may think best, and the commutation of said sentence shall provide for the restoration of citizenship to said parole prisoner; but no petition or other form of application for either the parole or final release of any prisoner shall be entertained by the warden or prison board. Nothing in this act shall be construed as impairing the power of the governor to grant a full pardon, a conditional pardon, or commutation in any case." (R. S. 62-1526.)

The code of criminal procedure merely provides that, in cases in which the governor is authorized to pardon, he may impose such conditions and restrictions as he may think proper. (R. S. 62-2215.)

Although power to commute is logically derivable from power to pardon, on the principle that the greater includes the less, commutation is essentially different from pardon. Pardon exempts from punishment, bears no relation to term of punishment, and must be accepted or it is nugatory. Commutation merely substitutes lighter for heavier punishment (*Rich v. Chamberlain,* 107 Mich. 381, 383). It removes no stain, restores no civil privilege, and may be effected without the consent and against the will of the prisoner. (*In the matter of Sarah M. Victor,* 31 Ohio St. 206; 20 R. C. L. 530.) Conditions attached to pardons are things voluntarily to be accepted and performed (*Ex Parte Janes,* 1 Nev. 319), or terms must be served out. Such conditions are not germane to the subject of reduced length of term, which, when served, fully satisfies the law, whatever its length. The result is, power of the governor of this state to commute extended merely to reducing duration of imprisonment and amount of fine, until the legislative session of 1921, which authorized conditional commutation. (R. S. 62-2216.)

In the instant case, the sentences were not merely commuted to end on specified days, that of Charles on September 18, 1918, and that of Howard on November 20, 1918, but the commutations were

made under the indeterminate-sentence law, which contemplates final discharge with restoration of citizenship. Under that statute, the warden recommends to the prison board, not conditional, but final release. If the board concludes the prisoner is entitled to final release, it so recommends to the governor. If the governor approves the recommendation, his commutation ends period of sentence on the date he fixes, and the commutation must restore citizenship. (R. S. 62-1526.)

The statement following commutation in the instruments discharging the petitioners, "This pardon is granted upon the following conditions," and the conditions annexed, are not sufficient to change the character of the instruments. What the governor had done was to commute; commutation could not be changed to pardon by calling it pardon; conditional commutation was not permissible; and the conditions were not appropriate to the status of one leaving civil life and placing himself under military discipline for possible service overseas. At most, the documents are merely ambiguous. Generally, ambiguities are to be resolved in favor of the recipient of the act of grace, and limitations are to be strictly construed. (20 R. C. L. 547.) In this instance, the state of the law and the circumstances disclosed by the evidence require application of the rule.

The petitioners are discharged.