WILLIAM E. DAVENPORT V. THE STATE.

No. 16861.   Delivered November 21, 1934.
Rehearing Dismissed January 23, 1935.
Reported in 78 S. W. (2d) 605.

The opinion states the case.

*W. A. Anderson* and *Wm. E. Davenport,* both of San Angelo, and *Dan Moody* and *J. B. Robertson,* both of Austin, for appellant.

*Glenn R. Lewis,* Dist. Atty., of San Angelo, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is theft; penalty assessed at confinement in the penitentiary for two years.

The indictment is as follows:

"THE GRAND JURORS, duly selected, organized, sworn and impaneled as such for the County of Tom Green, State of Texas, at the May term, 1933, of the 51st Judicial District Court of said County, upon their oaths present in and to said Court that on or about the 4th day of December, A. D. 1930, and anterior to the presentment of this Indictment, in the County and State aforesaid William E. Davenport, did, then and there unlawfully and fraudulently take a certain written instrument, the same being a check of the value of $250.00, the same being the corporeal personal property of John Lewis, from the possession of the said John Lewis, without the consent of the said John Lewis, and with the intent then and there to deprive the said John Lewis of the value thereof and to appropriate it to the use and benefit of him, the said William E. Davenport; said check reading in words and figures as follows:

"The Farmers National Bank of Cross Plains, Texas
"Cross Plains, Texas, 12-1930
"Pay to the order of Wm. E. Davenport $250.00
"Two Hundred fifty & 00/100 Dollars
"Part fee in Odessa cases

"John Lewis."

The offense is defined in article 1413, P. C., 1925, and that part which is applicable to the present instance reads as follows:

"* * * or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete."

The substance of the uncontroverted evidence is as follows: Contemplating the indictment of his son for a penal offense, J. W. Lewis contracted with appellant, a lawyer, to defend the son. The contract was in writing and was to the effect that if Lewis' son was indicted appellant should receive $250; that in case of a trial in the district court he should receive $500; and in the event of an appeal to the Court of Criminal Appeals he should receive $1,000. Lewis and his wife executed and delivered to appellant a promissory note, due one year after date, for the total sum of $1,000, in accord

with the contract mentioned, which note was secured by a deed of trust on seventy-five acres of land described in the mortgage. The note and mortgage were received by appellant on May 2, 1930. On June 5, 1930, appellant transferred the note and mortgage to W. A. Griffis in consideration of the payment by Griffis to appellant of the sum of $900. After the deed of trust and note had been transferred to Griffis, which fact was unknown to Lewis, appellant received from Lewis the check for $250 which is described in the indictment. Lewis' son having previously been indicted for a felony, the check was in part payment of the note.

In his charge to the jury the court embraced the following: "* * * but in this connection you are further charged that if the taking, though originally lawful and with the consent of the owner, was obtained with intent to deprive the owner of the value thereof, and to appropriate said property to the use and benefit of the person taking same, and same is so appropriated, the offense of theft is complete."

There was no exception to the charge mentioned, but counsel for the appellant urges that the charge amounted to fundamental error. On the same ground the following paragraph of the charge was assailed: "Now, if you believe from the evidence, beyond a reasonable doubt, that the defendant, William E. Davenport, in the County of Tom Green and State of Texas, on or about the 4th day of December, 1930, took from the possession of John Lewis, with the consent of the said John Lewis, the check for $250.00 described in the indictment, with the intent to deprive the said John Lewis of the value thereof, and to appropriate said property to the use and benefit of the said William E. Davenport, and that the same was so appropriated, and that the same was of the value of Fifty Dollars or over, then you will find the defendant guilty of theft of personal property of the value of Fifty Dollars or over, as charged in the first count of the indictment, and assess his punishment at confinement in the penitentiary for any term of years, not less than two nor more than ten; but, if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict Not Guilty."

As the record is understood, the instruction is not incorrect. Moreover, it seems obviously not fundamental error, and the absence of exception to the instruction during the trial would waive any defect not fundamental. Such is understood to be the effect of the statute, article 666, C. C. P.; also articles 657 to 660, C. C. P., and Johnson v. State, 224 S. W., 1103, cited by

appellant.

Reference is made to that part of the contract between appellant and Lewis in which it is stated that Lewis and wife, in addition to the fees, would pay all expenses incident to the defense of the suit. The proposition is advanced that the State failed to prove the amount of the expenses or the satisfaction of them, and that such failure was fatal to the conviction. This is not regarded as tenable. The testimony adduced from Lewis and Doctor Griffis, including the declarations of the appellant, is quite adequate to show that Lewis was not a debtor of the appellant. On this subject attention is directed to the following: After testifying as to learning that appellant had obtained the $250 as payment on the note *after* the note and mortgage had been sold to Griffis by appellant, Lewis stated: "I recall when Mr. Davenport and Dr. Griffis came to see me in August, 1931. Two days before that Mr. Davenport came to see me. * * * I talked to Mr. Davenport at that time about this business and he said he thought he could sell this land to Dr. Griffis for $35.00 an acre, and asked if I would take that and I told him I would. He said, 'Don't you expose me and I will bring him down and if I sell it, will you loan me a thousand dollars?' and I told him I would. He said not to expose him and that he would pay off; that he had a $34,000.00 estate to close up and he would have plenty of money. He has never paid me anything."

Moreover, the testimony of Lewis is to the effect that in another interview with appellant (which was at the time he was paid $200 by Lewis, which completed the full amount of the note and which would have been due appellant had he been the owner of the note) appellant said: "Pay me and I will give you a receipt and as soon as the man comes back I will send your note to you."

Lewis testified further that he received from appellant the following note: "I was unable to get in touch with the party that has your note, but will send the same to you together with the release as soon as he gets back to town."

There is no evidence that there were any expenses incurred.

We have examined the very able brief of counsel for the appellant and note the cases upon which he bases his contention that the offense is swindling and not theft, the cases being: Lewis v. State, 171 S. W., 217; Gibson v. State, 214 S. W., 341; Elbury v. State, 25 S. W. (2d) 846; DeBlanc v. State, 37 S. W. (2d) 1024; Sherman v. State, 62 S. W. (2d) 146. The contention is answered by the statute, article 1549, P. C., which con-

tains the following: "Where property, money, or other articles of value enumerated in the definition of swindling, are obtained in such manner as to come within the meaning of theft or some other offense the rules herein prescribed with regard to swindling shall not be understood to take any such case out of the operation of the law which defines any such other offense."

See Witherspoon v. State, 37 S. W., 433, and other cases to which reference is made in Haley v. State (No. 16834), not yet reported*. The statute mentioned seems to have been overlooked in the decision of some of the older cases. However, in our opinion, the record before the court in the present appeal sustains the view that appellant obtained the check from Lewis with the intent to deprive the owner of the value of the check and to appropriate the property to the use and benefit of the appellant, and that the same was so appropriated. Such was the issue submitted to the jury, and the prosecution for theft was clearly authorized under the terms of article 1549, P. C.

The statute denouncing the offense embraces two modes of committing the crime, namely, obtaining the property by false pretext and obtaining the property with intent to deprive the owner of the value of the property in question. The present prosecution is based upon the latter. The distinction between a prosecution under this statute and others denouncing theft is emphasized in many decisions of this court. Among them is Segal v. State, 98 Texas Crim. Rep., 485. See Vernon's Ann. Tex. P. C., vol. 3, art. 1413, and notes thereunder on page 23 of 1934 Cumulative Annual Pocket Part. See also Speer v. State, 58 S. W. (2d) 95; DeBlanc v. State, 118 Texas Crim. Rep., 628.

The first count of the indictment contains the averment that appellant obtained possession of a check for $250 "with intent then and there to deprive the said John Lewis of the value thereof and to appropriate it to the use and benefit of him, the said William E. Davenport." A copy of the check follows this averment. The facts are regarded as different from those in the cases to which we have been referred, namely: Hedge v. State, 229 S. W., 862; Price v. State, 91 S. W., 571; Harris v. State, 17 Texas App., 177; Mitchell v. State, 180 S. W., 115; also P. C., 1925, arts. 1416 and 1417. The articles mentioned and the decisions, so far as they are applicable to the law of theft, deal with a different state of facts. The check on its face shows that it came from the alleged injured party and was delivered to the appellant and unlawfully appropriated by

him, if the jury's finding is correct. There is no inference to be drawn from the facts as pleaded in the indictment that appellant had a right to the check. The indictment is based upon the averment stating that *"the check was obtained with intent to deprive the owner of the value thereof and to appropriate the property to the use and benefit of the appellant or of the person taking."* The evidence shows that appellant received the proceeds of the check.

The case of Hedge v. State, 89 Texas Crim. Rep., 236, 229 S. W., 862, is one in which Watkins, the injured party, was indebted to the appellant, Hedge, in the sum of $636.79. By mistake Watkins delivered to Hedge a check for $1061, made payable to the latter. Hedge collected the check and appropriated the entire amount, which was $424.21 more than he was entitled to. In the opinion we find that appellant asked for an instruction to the jury that if part of the check belonged to him there could be no conviction. From the opinion we quote: "This was correctly refused. If appellant had been charged in the indictment with theft of the check itself, a different question might be presented."

The other cases mentioned are distinguishable from the present in that there was no question before the jury as to the right of the accused or his bona fide claim of right to the property he had acquired. In the present instance, there is no issue of mistake; nor is there any suggestion that appellant had any right to the check which was delivered to him.

There was a second count in the indictment against the appellant in which it is asserted that appellant fraudulently embezzled the check from Lewis. The first count alone was submitted in the court's charge. The contention is made that even though abandoned the second count was available to the appellant to destroy the first count, citing Morgan v. State, 31 Texas Crim. Rep., 1. We have examined the case mentioned, and are unable to discover its applicability to the present appeal. In the Morgan case, supra, there were five counts in the indictment. The judgment of conviction was affirmed. Its bearing, if any, on the questions arising in the present case are regarded as extremely remote.

There are several bills of exception in the record. With reference to Bill No. 1, it may be said that the fact that the check for the $250 in question was drawn on a bank in Callahan County did not destroy the venue in Tom Green County where the check was delivered by Lewis and received by appellant.

Bill No. 2: The introduction in evidence of the check for $200 described was not error as it had bearing on the intent of appellant who, at the time of receiving the $200 check, was suppressing the fact that he had no right to the $250 check.

Bill No. 3: Proof that accused received $250 on December 4, 1930, did not render incompetent the proof of the payment of $200 on January 5, 1931, for the reason that on neither of the dates did appellant own the note upon which the payments were made. At the time of receiving the $200, appellant, according to the evidence, in effect represented to Lewis that he owned the note and that he would send it to Lewis.

Bill No. 4: There was evidence that the bank account at San Angelo was kept in the name of Davenport, Farrell and Wilmer, and that the check for $250 was placed to the credit of that account in the bank at San Angelo. There was also evidence that Davenport, Farrell and Wilmer was a firm of lawyers having an office at San Angelo, in which office appellant was interested in the business which he acquired. The complaint of the proof mentioned is not regarded as tenable.

Bill No. 5: The proof showing that the proceeds of the $250 check upon which the prosecution is founded went into the account of the firm of lawyers of which appellant was a member is deemed quite sufficient. The proof that appellant was a member of the firm is relevant. The bill is regarded as disclosing no error.

Bill No. 6 is of the same nature as Bill No. 5. It shows the status of the account of the firm mentioned and the payment of the check for $250, which was shown to have been drawn by Lewis in favor of the appellant. The bill is qualified with the statement that Lewis had testified that, according to his recollection, he had delivered the $250 check to Davenport on December 3, 1930. The check was endorsed by the appellant.

Bill No. 7: When appellant received from Lewis the $200 as final payment of the note on January 5, 1931, he said to Lewis: "The man who had my note had gone to McKavitt; you pay me and I will give you a receipt and as soon as the man comes back I will send you your note."

No vice in the evidence is perceived when considered in the light of the fact that at the time the $200 were paid appellant was suppressing the fact that he was not entitled to receive the $250 which he had previously received for the reason that at the time he received the latter amount he was not the possessor or the owner of the note in question, nor was he such at the time

he made the declaration on January 5, 1931, when he received the $200.

Bill No. 8: The witness, John Lewis, had been convicted of cattle theft some thirty years before the trial. When he was called as a witness the State's atttorney advised the court, as well as counsel for appellant, of this fact in the absence of the jury. Upon hearing the evidence and after conversation with counsel for the State and the appellant, the court ruled that the evidence was too remote to be used for the purpose of impeachment. Counsel for appellant were told that they might question the witness in the absence of the jury if they desired so that the court could be more fully informed on the subject, but they declined to do so. It was conceded that the facts stated were true.

In Bill No. 9 complaint is made of the alleged argument of which the following statement is imputed to the district attorney: "All of the Odessa cases had been disposed of by being dismissed before this payment was made."

Upon objection by appellant's counsel the court instructed the jury orally to disregard the statement. However, exception was reserved and the bill is qualified by the trial court as follows: "The District Attorney's statement in his argument was not as set forth above but was 'that the evidence shows that the rape case was disposed of by dismissal.' Upon defendant's request the court, as set forth above, then and there orally instructed the jury not to consider the statement."

As qualified, the bill shows no prejudicial error.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant was convicted of theft, and his punishment assessed at confinement in the penitentiary for two years.

On the 21st day of November, 1934, the judgment of conviction was affirmed by an opinion of this court. Within the proper time appellant filed a motion for rehearing. Pending disposition of such motion, Miriam A. Ferguson, Governor of the State, on the 14th day of January, 1935, granted to appellan a full pardon as evidenced by photostatic copy thereof attached to the State's motion calling our attention to the matter.

It appearing that appellant has been pardoned the motion for rehearing is dismissed.

*Dismissed.*

(*Reported on page 177 of this volume).