JOHN GILDERBLOOM V. STATE

No. 26,923.  May 5, 1954
Rehearing Denied October 6, 1954
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) November 10, 1954

472

*H. E. Brockmoller,* and *Cunningham & Malone,* by *R. E. Cunningham,* El Paso, for appellant.

*Wesley Dice,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is driving while intoxicated; the punishment, three days in jail and a fine of $50.00.

Officers Althoff and McBain testified that they observed appellant's automobile being driven in an erratic manner, that they turned around and overtook the appellant and placed him under arrest. They stated that the appellant smelled of alcohol, was unsteady on his feet, and when being asked if he knew where he was said, "Yeah, I'm in Las Vegas, Nevada." They stated that in their opinion appellant was intoxicated. Appellant was carried to the hospital, where a specimen of his blood was taken with his consent.

Chemist Pelton of the Texas Department of Public Safety testified that he tested the blood sample sent from El Paso and found it to contain 1.7 milligrams of alcohol per cubic centimeter of blood and that such percentage was indicative of intoxication.

Appellant, testifying in his own behalf, stated that he had been to Juarez, Mexico, with his friend Colonel Daly, and had had some drinks, but denied that he was intoxicated at the time of his arrest.

Colonel Daly corroborated the testimony of appellant. Other witnesses testified that appellant's reputation for sobriety was good.

The jury resolved the disputed issue of the appellant's intoxication against him, and we find the evidence sufficient to support the conviction.

We shall now discuss the contentions advanced by able counsel in his brief.

By Bill of Exception No. 1 the appellant complains of the overruling of his motion to quash the information on the ground that Article 802, V.A.P.C., as amended by the 53rd Legislature, is unconstitutional in that such act grants to the trial judge power to commute the mandatory jail sentence which is in conflict with the constitutional provision placing the exclusive power to grant commutations in the Governor.

If the act as amended was held to be unconstitutional, this would not avail the appellant on a motion to quash. This is so because the act prior to its amendment would still be the law, and the information herein would properly charge a violation thereof. It therefore does not become necessary for us to pass upon appellant's contention in the case at bar.

Appellant objected to the testimony of the chemist concerning the testing of the blood sample submitted to him on the ground that the sample had not been identified as the blood which was taken from the appellant. Reliance is had upon Brown v. State, 156 Texas Cr. Rep. 144, 240 S.W. 2d 310. In that case the officer who took Brown to the hospital testified as follows:

" . . . Yes, a blood test or blood specimen was taken from the man at that time in my presence. A nurse took that specimen, I don't remember her name. Dr. Hershberger was not present at that time. After the blood specimen had been taken she taken the blood and put it in a tube and I left the blood specimen with them there at the hospital; then I took Mr. Brown back with me to the police station."

Dr. Hershberger testified that Anne Evans called his attention to a blood specimen in the hospital ice box. Neither Anne Evans or any other nurse testified that the sample of blood which Dr. Hershberger received contained Brown's blood.

In the case before us Officer Althoff testified that he took the appellant to the hospital and thence to the jail. From his testimony we find the following:

"Q. Now what was done with the blood sample taken from Mr. Gilderbloom? A. As soon as it was taken at the hospital the label was made out there and it was sealed and placed in a tube that the Department of Public Safety provides and it was placed in the designated place in the Sheriff's office and mailed.

"Q. Did you prepare this label yourself? A. Sir?

"Q. Did you prepare this label yourself that went on the tube? A. Yes, sir, I did.

"Q. I will ask you to examine this, Mr. Althoff. A. Yes, I prepared that.

"Q. Is that the blood sample that you placed in that tube? A. Yes, sir.

"Q. That is your handwriting on it? A. Yes, sir.

\* \* \* \*

"Q. And it was sealed when you put it in the container and had it mailed? A. Yes, sir.

"Q. And this is, then, the sample that was taken from John Gilderbloom out there at the hospital? A. Yes, sir."

It is immaterial that Officer Althoff did not mail the sample to Austin. He was present when the sample was taken, placed in the tube, which he labeled, and then sealed.

Chemist Pelton testified that the seal was unbroken when he received the sample in the mail from El Paso. The tube which he tested was introduced in evidence and bore the following notation:

"Name of Subject          J. D. Gilderbloom
Place of Arrest           8900 80 E
Time of Arrest            8:00 P Date 9-9-53
Sample Taken by           M. Hicks
Title Nurse               Time Sample Taken 8:15
Sample Requested by       John Gilderbloom
L-37378   1.7 mg RP"

The chain of custody here was not established with the care demonstrated in Abrego v. State, 157 Texas Cr. Rep. 264, 248 S.W. 2d 490, but we think sufficiently so.

Bill of exception No. 3 recites that after the jury retired to consider their verdict they submitted the following question to

the court: "What is the state law on the point of alcoholic concentration that determines drunkenness by laboratory test?" The court refused to answer the question and referred the jury to the charge already given them.

Appellant contends that the court should have told the jury that there was no state law on the subject.

We think the trial court acted properly and in accordance with our holding in Edwards v. State, 71 Texas Cr. Rep. 418, 160 S.W. 709.

Bill of Exception No. 4 recites that after the jury had retired to consider its verdict the jury returned into open court with the request that the testimony of the chemist Pelton be reproduced for them, and the court permitted his testimony to be read back to them by the court reporter.

We find such procedure authorized by Article 678, V.A.C.C.P.

By Bills of Exception Nos. 6 and 7 complaint is made of the closing argument of the prosecutor. The quoted argument is as follows: "Would you like to meet a man like that with your family driving down the road?" There is no showing in the bill as to whom the prosecutor was referring when he made such statement. Because of this, the argument is not manifestly improper, violates no mandatory statute and does not inject any new fact in the case. We do not think that the statement of the prosecutor constituted such an appeal to passion or prejudice as to call for a reversal of this conviction.

Appellant asked that the jury be instructed that the blood test in evidence was not conclusive proof of intoxication, but might be considered with the other evidence in reaching its verdict. Such a charge would have been a comment on the weight of the evidence contrary to Article 658, V.A.C.C.P.

Appellant requested the court to charge the jury that evidence of his good reputation could be considered by it with all the other evidence in determining his guilt. He cites no authorities in support of his contention that such a charge should have been given.

In Heard v. State, decided by the Court of Appeals in 1880 (9 Ct. of App. Rep. 1), we find the following:

"It is also urged that, inasmuch as the defendant had introduced evidence of previous good character, the jury should have been instructed as to the effect of such testimony. The judge, by admitting the evidence to the jury, authorized them to consider it; to have done more would have been to invade the province of the jury, who are by law the exclusive judges of the weight to be given to the testimony. It was beyond the power of the court to tell the jury how much weight they should attach to the evidence of good character."

Finding no reversible error, the judgment of the trial court is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING

GRAVES, Presiding Judge.

On the original submission we declined to consider the attack made upon the constitutionality of Article 802, V.A.P.C., as amended by the 53rd Legislature, upon the theory that if the amendment was void the conviction could be sustained under Article 802, V.A.P.C., as it existed prior to the amendment.

In this we were in error for the reason that under the former act there is no authority for the imposition of a jail term of less than ten days. Since the appellant's punishment was assessed at three days in jail and a fine of $50.00, the judgment of conviction cannot be upheld unless the amended act is valid.

The amendment of Article 802, V.A.C.P., by Act of the 53rd Legislature, page 480, Chapter 167, provides for a mandatory jail term of not less than three days nor more than two years in addition to a fine, and contains the following proviso:

"Provided, however, that the presiding judge in such cases at his discretion may commute said jail sentence to a probation period of not less than six (6) months."

To commute punishment means to change it from that assessed against a convicted defendant into a less severe one.

If the quoted language of the amending statute means commutation, the provision is in violation of the Constitution, which vests the power to grant reprieves and commutations of punishment and pardons in the Governor, on recommendation of the Board of Pardons and Paroles. Constitution of Texas, Article

IV, Section 11 (adopted November 3, 1936); Ex parte Miers, 124 Texas Cr. Rep. 592, 64 S.W. 2d 778; Snodgrass v. State, 67 Texas Cr. Rep. 615, 150 S.W. 162; Snodgrass v. State, 67 Texas Cr. Rep. 648, 150 S.W. 178.

In Ex parte Hayden, 152 Texas Cr. Rep. 517, 215 S.W. 2d 620, we held that the terms of Article 781b, C.C.P., (the Adult Probation and Parole Law) had no application except in those cases where a sentence had been made mandatory by the legislature. Such has not been done in those cases denounced by the article in question here. Any holding consistent with the Hayden case would necessarily hold the above proviso unconstitutional.

It therefore remains to be determined whether the statute in question amending Article 802, P.C., in regard to the punishment to be assessed, may be upheld without the unconstitutional provision for commuting the punishment.

The rule appears to be that in the absence of a severability clause, if the unconstitutional part is stricken and that which remains is complete in itself and capable of being executed in accordance with the legislative intent, the remainder must be sustained.

In Smith v. State, 158 Texas Cr. Rep. 410, 256 S.W. (2d) 109, in discussing the help we might receive from an emergency clause, we said:

"* * * But such clause often provides a window through which we may glimpse the intent of the Legislature."

The emergency clause of the amendment now under consideration reads, in part, as follows:

"The crowded condition of the calendar and the fact that the present law does not make mandatory a jail sentence, creates an emergency and an imperative public necessity. . . ."

We conclude from this that the prime purpose of the legislature was to make a jail sentence mandatory and that the provision as to commutation was only incidental thereto.

If we are mistaken in this, the legislature may, of course, at the session which is soon to convene make such changes in

the law as they see fit which are consistent with the holding herein.

We hold that the proviso which authorizes commutation of the jail sentence is unconstitutional and inoperative but that the remainder of the act is valid.

It necessarily follows from our disposition of this question that the appellant's motion for rehearing should be overruled. It is so ordered.