**Tracey Virgil WHAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 41789.**

Court of Criminal Appeals of Texas.

June 28, 1972.

Rehearing Denied Oct. 11, 1972.

Frank Mabry, Forrest F. Baird, Houston, Mitchell, Gilbert & McLean, Austin, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Erwin G. Ernst, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

Appellant was convicted of murder with malice aforethought and his punishment was assessed at death. On appeal, this Court affirmed the conviction on February 26, 1969. Whan v. State, 438 S.W.2d 918 (Tex.Cr.App.1969). The United States Supreme Court granted appellant's petition for certiorari, and on June 28, 1971, ordered that "The judgment of the Court of Criminal Appeals of Texas, insofar as it imposes the death sentence, be reversed, and that this cause be remanded to the Court of Criminal Appeals of Texas for further proceedings." Whan v. Texas, 403 U.S. 946, 91 S.Ct. 2281, 29 L.Ed.2d 856 (1971).

The mandate of this Court affirming the judgment of the trial court was issued on April 25, 1969. Subsequently, on May 28, 1969, appellant was sentenced to death, sentence not having been passed prior to the disposition of appellant's appeal, pursuant to Art. 42.04, Vernon's Ann.C.C.P.

On December 28, 1971, Governor Preston Smith, acting upon the recommendation of the Board of Pardons and Paroles, granted appellant a commutation of sentence, from death to life imprisonment.

■ The question before the Court is the disposition to be made of the case at this point. It has been recently decided that this Court does not have the power to assess punishment at life imprisonment in cases where the death penalty has been assessed illegally by a jury, nor may this Court remand the case for assessment of punishment only, where the punishment was originally set by a jury. Ocker v. State, 477 S.W.2d 288 (Tex.Cr.App.1972). Therefore, it would not be proper for this Court to reverse the judgment of the trial court, insofar as it imposes the death penalty, and to reform the judgment so that punishment is assessed at life imprisonment.

■ We are also of the opinion that the Governor's commutation is valid, notwithstanding that the case is still pending before this Court. Art. IV, Sec. 11 of the Texas Constitution, Vernon's Ann.St. and Art. 48.01, V.A.C.C.P., provide:

"In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishments and pardons . . . ."

In construing the meaning of the term *after conviction,* as used in the above provision, this Court stated, in the case of Snodgrass v. State, 67 Tex.Cr.R. 615, 150 S.W. 162 (1912):

"Under the common law, a person was said to be convicted of the crime when verdict was rendered thereon adjudging him guilty . . . ." at 172.

"The foregoing references show that the ordinary meaning of the word 'conviction' is the verdict of guilty pronounced by a jury." at 173.

"Thus it is seen that the terms 'after conviction' in our Constitution do not embrace the sentence, but simply mean the determination of guilt or innocence of a defendant, and the person becomes subject to pardon whenever that issue is finally determined." at 174.

Likewise, in Goss v. State, 107 Tex.Cr.R. 659, 298 S.W. 585 (1927), this Court stated:

"While in some sense the term 'conviction' applies to a final judgment of guilty, that term, as used in our Constitution, means a *verdict* 'of guilty,' and a pardon granted pending appeal is valid."

In addition, Art. 42.07, V.A.C.C.P., provides, in part:

"Before pronouncing sentence, the defendant shall be asked whether he has

anything to say why the sentence should not be pronounced against him. The only reasons which can be shown, on account of which sentence cannot be pronounced are:

"1. That the defendant has received a pardon from the proper authority, on the presentation of which, legally authenticated, he shall be discharged. * * *"

This Article indicates that a pardon is valid even if granted before sentence is pronounced. The Governor's authority to grant commutations arises from the same Article of the Constitution as does his authority to grant pardons. It follows that a commutation under the same circumstances would likewise be valid, the punishment having been assessed before sentence is pronounced, and therefore subject to commutation.

▮ We note that the United States Supreme Court ordered that the judgment of this Court be reversed "insofar as it imposes the death sentence." However, in light of our State procedure, we construe the order as reversing the affirmance, by this Court, of the *judgment* of trial court (the sentence not having been imposed at the time of affirmance), and remanding the cause for further proceedings. In light of the Governor's commutation, we conclude that the proper course to follow is to again affirm the judgment of the trial court. The imposition of the death penalty is no longer possible by virtue of the commutation. However, a commutation does not affect the judgment, but merely mitigates the punishment which can be given. *See* Young v. Young, 61 Tex. 191 (1884). That being the case, no change in the original judgment is necessary. The Supreme Court reversed our affirmance only in regard to the death penalty. The Governor's commutation has rendered the death penalty portion of the trial court's judgment and subsequent sentence a nullity. Therefore, the proper course for this Court to follow is to again affirm the judgment of the trial

court. By so doing, the order of the Supreme Court is satisfied.

The judgment is affirmed.

DOUGLAS, J., not participating.

ONION, Presiding Judge (dissenting).

On February 26, 1969, this court affirmed the conviction for murder wherein the death penalty was assessed by the jury. See Whan v. State, 438 S.W.2d 918 (Tex. Cr.App.1969). In affirming the conviction, this court concluded that the jury had not been selected in violation of the mandate of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). This opinion was handed down prior to the decisions in Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969), and Maxwell v. Bishop, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970).

The United States Supreme Court granted this appellant's petition for writ of certiorari, and on July 23, 1971, ordered

". . . that the judgment of the Court of Criminal Appeals of Texas, insofar as it imposes the death sentence, be reversed, and that this cause be remanded to the Court of Criminal Appeals of the State of Texas for further proceedings. Witherspoon v. Illinois, 391 U.S. 510 [88 S.Ct. 1770, 20 L.Ed.2d 776] (1968); Boulden v. Holman, 394 U.S. 478 [89 S.Ct. 1138, 22 L.Ed.2d 433] (1969); and Maxwell v. Bishop, 398 U. S. 262 [90 S.Ct. 1578, 26 L.Ed.2d 221] (1970)."

Upon re-examination of the voir dire examination of the prospective jurors in light of Boulden v. Holman and Maxwell v. Biship, both supra, I am convinced that the judgment of affirmance heretofore rendered in this cause must be set aside and vacated pursuant to the mandate from the Supreme Court.

Where it is conceded that the mandate of *Witherspoon* has been violated, it has

been the consistent policy of this court that, although the error is to penalty alone, the cause must be reversed for an entirely new trial. Ellison v. State, 432 S.W.2d 955 (Tex.Cr.App.1968); Grider v. State, 468 S.W.2d 393 (Tex.Cr.App.1971); Ocker v. State, 477 S.W.2d 288 (Tex.Cr.App.1972). This is so, for as explained in Ellison v. State, supra, ". . . this court is without authority to direct a new trial before a different jury on the issue of punishment only." A jury alone may assess the death penalty. Jones v. State, 416 S.W.2d 412 (Tex.Cr.App.1967). Therefore, in each case where reversal has been predicated upon a *Witherspoon* error, the defendant has been entitled to a new trial where the issue of guilt is to be relitigated and where the jury, upon a finding of guilt, may consider the full range of penalty for murder in assessing punishment.

It would appear that this appellant would be entitled to such procedure except for the fact that on December 28, 1971, the Governor of Texas granted "unto the said Tracey Virgil Whan the commutation of sentence from death to life imprisonment in the Texas Department of Corrections, . . . ."

The Governor acted upon the recommendation of the Board of Pardons and Paroles, who in turn acted upon the recommendations of the District Attorney, the District Judge and the Sheriff. These individuals apparently relied upon Attorney General's Opinion No. M–981 (Nov. 1, 1971).

The question presented is whether or not the Governor and the Board of Pardons and Paroles had the authority to take such action following the reversal of the case as to penalty by the Supreme Court and prior to any action by this court pursuant to the mandate of the Supreme Court.

The majority agrees that the Governor's action was proper, apparently equating "commutation" with "pardon". I cannot agree.

Article IV § 11 of the Texas Constitution provides in part:

"· · · · ·

"In all criminal cases, except treason and impeachment, the Governor shall have power, *after conviction,* on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprives and commutations of punishment and pardons; and under such rules as the Legislature may prescribe, and upon the written recommendation and advice of a majority of the Board of Pardons and Paroles, he shall have the power to remit fines and forfeitures. The Governor shall have the power to grant one reprieve in any capital case for a period not to exceed thirty (30) days; and he shall have power to revoke paroles and conditional pardons. With the advice and consent of the Legislature, he may grant reprieves, commutations of punishment and pardons in cases of treason." (Emphasis supplied.)

See, also, Article 48.01, Vernon's Ann.C.C.P. *Cf.* former Article 955, Vernon's Ann. C.C.P. (1925).

44 Tex.Jur.2d Pardon, Reprieve, and Commutation § 1, p. 3, declares that

"[a] pardon is an act of grace that proceeds from the power entrusted with the execution of the laws, and that exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime that he has committed. The term has been further defined as a remission of guilt, and as an act of grace by which an offender is released from the consequences of his offense, so far as the release is practicable and within the control of the pardoning power or of officers under its direction. . . ."

See, also, Young v. Young, 61 Tex.Rep. 191 (1884); Ex parte Rice, 72 Tex.Cr.R. 587, 162 S.W. 891 (1914); Snodgrass v. State, 67 Tex.Cr.R. 615, 150 S.W. 162

(1912); Warren v. State, 127 Tex.Cr.R. 71, 74 S.W.2d 1006 (1934); Carr v. State, 19 Tex.App. 635 (Tex.Ct.App.1885); Ex parte Miers, 124 Tex.Cr.R. 592, 64 S.W.2d 778 (1933).

Black's Law Dictionary 4th Ed. is in accord with such definition and further states, at p. 1268,

> "It (pardon) releases punishment and blots out the existence of guilt, so that in the eyes of the law the offender is as innocent as if he had never committed the offense. . . ."

"Pardon" is also defined in 31 Words and Phrases, p. 83. And, in Young v. Young, supra, the court said

> ". . . A pardon, in its nature, is wholly exculpatory of the convict's criminality; remits the punishment, and, as it were, renews the man and rehabilitates him in the garb of innocence . . . ." 61 Tex.Rep. at 194.

As noted in Snodgrass v. State, supra, a pardon reaches both the punishment prescribed for the offense, and the guilt of the offender.

On the other hand, Black's Law Dictionary 4th Ed., p. 351, defines "commutation" as meaning "[a]lteration; change; substitution; the act of substituting one thing for another." Such authority also states that the term in criminal law means the substitution of one punishment for another, after conviction of the party subject to it. "The change of a punishment from a greater to a less; as from hanging to imprisonment. (Citing authorities.)" See, also, Young v. Young, supra; Snodgrass v. State, supra; Gilderbloom v. State, 160 Tex.Cr.R. 471, 272 S.W.2d 106, 110 (1954).

And, in Hagelberger v. United States, 445 F.2d 279, 280 (5th Cir. 1971), it was held that "commutation" is the executive act reducing the term of a sentence already imposed and substituting lesser for greater punishment.

The distinction between "pardon" and "commutation" is clear. As pointed out in Whittington v. Stevens, 221 Miss. 598, 73 So.2d 137, (1954), a "pardon" and a "commutation" are distinguishable in that a "pardon" is an act of grace relieving the person named from the legal consequences of the specific crime, while a "commutation of sentence" is the change of punishment to which a person is sentenced to a less severe punishment.

As noted in the early case of Young v. Young, supra, a "commutation of punishment" is not equivalent to a full pardon of the offender, since it simply mitigates the severity of the punishment.

Thus, it would appear that "pardon" is used to describe a complete and total cancellation of punishment while the term "commutation" is used to describe a substitution of a lesser or partial punishment. See 8 Words and Phrases p. 242.

As further pointed out by Judge Woodley in Ex parte Lefors, 165 Tex.Cr.R. 51, 303 S.W.2d 394 (1957), a pardon must be accepted in order to be effective;[1] while a commutation may be granted without the consent and against the will of the defendant.

> "Although both a pardon and a commutation are granted by the sovereign power; Goben v. State, 32 Okl.Cr. 237, 240 P. 1085, 1087; a 'commutation' means merely a change of punishment, while a 'pardon' avoids or terminates punishment for crime; Lupo v. Zerbest [Zerbst], C.C.A.Ga., 92 F.2d 362, 364. A pardon bears no relation to the term of punishment, and must be accepted or

---

1. In 44 Tex.Jur.2d Pardon, Reprieve, and Commutation § 10, p. 12, it is written: "A pardon is in effect a deed, to the validity of which delivery is essential, and delivery is not complete without acceptance. Delivery and acceptance are complete when the grantor has parted with his entire control over the instrument, with intention that it shall pass to the grantee, and the latter assents to it either by himself or by his agent."

its is nugatory; commutation removes no stain, restores no civil privilege, and may be effected without the consent and against the will of the prisoner. In re Charles, 115 Kan. 323, 222 P. 606, 608; Chapman v. Scott, D.C.Conn., 10 F.2d 156, 159." Black's Law Dictionary 4th Ed., p. 351.

See, also, Ex parte Janes, 1 Nev. 319, 321; In re Victor, 31 Ohio St. 206; Lee v. Murphy, 22 Grat. (Va.) 789, 12 Am.Rep. 563.

While the authority to pardon and to commute are found in the same constitutional article, they are both subject to the limitation that neither can be applied until "after conviction." There is some language in earlier cases which notes that a pardon may be applied after a determination of guilt or a verdict of guilty or while a case is pending on appeal, and that the same would be within the constitutional limitation. See Snodgrass v. State, 67 Tex.Cr.R. 615, 150 S.W. 162 (1912); Goss v. State, 107 Tex.Cr.R. 659, 298 S.W. 585 (1927). Thus, it would appear that a pardon could be granted after a finding of guilty under our present bifurcated trial system and prior to an assessment of punishment. This is so because a pardon applies to a remission of guilt by its very nature and it would not be dependent upon punishment being assessed for its exercise. On the other hand, some penalty must be assessed for the authority of commutation to be exercised.

While the Governor, acting upon the recommendation of the Board of Pardons and Paroles, may grant a pardon after a

person has been found guilty, and prior to the assessment of punishment, he could not commute the punishment if none has been assessed. If this court has reversed a conviction and issued its mandate, it would not appear that the Governor, prior to a new trial, could grant a pardon or commute the punishment previously assessed.[2]

Then, may the Governor commute the punishment assessed subsequent to the time the penalty has been expressly set aside by the mandate of the United States Supreme Court and prior to any further action by this court? I think not. How can he commute that which is no longer in existence and which was determined to have been improperly assessed? It must be remembered that we are not here dealing with a situation where this court has found some legal basis for reaffirming the penalty assessed following receipt of the mandate of the United States Supreme Court.

To permit the Governor and the Board of Pardons and Paroles such authority, under the circumstances of this case, would allow them to intervene and prevent a retrial and substitute their idea of what punishment should be assessed rather than a jury and to do so upon a selective basis among cases reversed by the United States Supreme Court, at the same time upon the same grounds.[3]

Nor can I understand the majority's action in reaffirming the judgment of the trial court "in light of the action of the Governor."

I am aware that Attorney General's Opinion No. M–981 would appear to sanc-

2. Article 44.29, Vernon's Ann.C.C.P., provides: "Where the Court of Criminal Appeals awards a new trial to the defendant, the cause shall stand as it would have stood in case the new trial had been granted by the court below."

Article 40.08, Vernon's Ann.C.C.P., provides: "The effect of a new trial is to place the cause in the same position in which it was before any trial had taken place. The former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument."

3. Turner v. Texas, 403 U.S. 947, 91 S.Ct. 2289, 29 L.Ed.2d 858 (1971) (462 S.W. 2d 9); Harris v. Texas, 403 U.S. 947, 91 S.Ct. 2291, 29 L.Ed.2d 859 (1971) (457 S.W.2d 903); Quintana v. Texas, 403 U.S. 947, 91 S.Ct. 2284, 29 L.Ed.2d 857 (1971) (441 S.W.2d 191); Crain v. Beto, 403 U.S. 947, 91 S.Ct. 2286, 29 L.Ed.2d 857 (1971).

tion the action taken by the Governor. However, Attorney General's opinions are persuasive, but are not binding upon courts. In this case, I do not even find the opinion persuasive, principally because of a failure to keep in mind the distinction between a pardon and a commutation, and the fact that the penalty assessed has passed out of the case by virtue of the Supreme Court's action. The Attorney General's opinion reads, in part:

". . . In Article IV, Sections 11 and 11A of our Constitution, the term 'after conviction' means only that the defendant must have been found guilty. The executive power to commute attaches as soon as punishment is assessed, without regard to whether the conviction is on appeal or has become a 'final' conviction. Davenport v. State [127 Tex.Cr.R. 552], 78 S.W.2d 605 (Tex.Crim.1935); Goss v. State [107 Tex.Cr.R. 659], 298 S.W. 585 (Tex.Crim.1927); 138 ALR 1162, 1164.[4]

"Therefore, even though a death penalty conviction may be on appeal, the executive power to commute that death sentence to life imprisonment exists. Even though the United States Supreme Court may reverse a judgment insofar as it imposes the death penalty and remand the case back to the Texas Courts for further proceedings in conformity with its judgment, unless and until the Texas Court takes final action on the case, it is still a conviction subject to the executive power to commute."

I cannot agree. In my view, there is no punishment to commute at this point in the proceedings. And, using the term "conviction", in its loosest sense, does not aid the resolution of the question.

For the reasons stated, I dissent.

4. Davenport v. State, supra, dealt with a full pardon, not a commutation. On motion for rehearing, this court learned a pardon had been granted and the motion for rehearing was "dismissed." Goss v. State, supra, did involve a commutation pending appeal, but the court talked in terms of a "pardon" and the fact that the defendant had accepted the clemency. A clear distinction between the two forms of clemency was not maintained. The court dismissed the appeal on the basis that the defendant had waived the right of appeal by accepting commutation.